EDWARD WALBRIDGE v. JAMES H. WALBRIDGE.*

*Certiorari. Practice. Liability of Kindred of Poor Persons for their Support. Gen. Sts. ch. 20, § 20.*

As the issuing of a writ of *certiorari* is, to a great extent, matter of discretion, the practice is, to hear the merits of the case upon the petition for the writ, and, practically, decide the whole case upon the granting or refusing of the writ.

Kindred of a poor person who have been to expense for the relief and support of such person, may maintain proceedings in their own name, under § 20, ch. 20, of the Gen. Sts., to have other kindred assessed for the support of such person, although such person never became chargeable to any town to the extent of receiving relief and support from such town, but would have became so chargeable, but for the relief and support of such kindred.

PETITION for a writ of *certiorari*. The petition alleged that the defendant preferred his complaint to the June term, 1872, of the county court, against the petitioner and one Henry S. Walbridge, wherein he complained,

" That Stebbins D. Walbridge, of said Bennington, and having his legal settlement in said Bennington, is poor and unable to sup-

---

*This case was decided at the February term, 1873.

port himself by reason of age and infirmity, and would long since have been, and would still be, chargeable to the town of Bennington for his support, had not the said James H. Walbridge, complainant, supported, and did he not still support, him the said Stebbins D. Walbridge ; and that Edward Walbridge and Henry S. Walbridge, both of Bennington aforesaid, and the said James H. Walbridge, complainiant, are the sons by consanguinity of the said Stebbins D. Walbridge, and are of sufficient ability to support the said Stebbins D. Walbridge, and the said Edward Walbridge and Henry S. Waldbridge are each of sufficient ability to bear a proportion of the expense of his support.

"And the said James H. Walbridge further complains, that he has been required to pay for the support of the said Stebbins D. Walbridge, during the six months now last past, as necessary expense for his support, and has paid, a large sum of money, to wit, one hundred and fifty dollars, and the said Edward Walbridge, and Henry S. Walbridge, though requested, neglect and refuse to pay their respective proportions of said expense so incurred, and refuse to pay the said respective proportions of future necessary expenses for his support. Wherefore the said James H. Walbridge prays the court to assess, on due hearing, and apportion upon said sons, to wit, Edward Walbridge and Henry S. Walbridge, in proportion to their ability respectively, such part of said expenses already incurred, and that may be incurred to the time of the assessment, as the said court shall judge reasonable ; and further, that said court may further assess and apportion upon said three sons, such weekly sums as the said court shall judge sufficient for the future support of the said Stebbins D. Walbridge, subsequent to the time of said first mentioned assessment, to be paid quarter yearly, till the further order of said court, according to the statute in such case made and provided."

The petition further alleged, that the petitioner filed a motion at said term to dismiss said complaint, for that it was not alleged therein that the said Stebbins D. Walbridge had become or was chargeable to the town of Bennington, or to any other town ; that the court overruled said motion, and continued the case to the December term, 1872, of said court, to which the petitioner excepted ; that at said last mentioned term, the petitioner filed a general demurrer to said complaint, which the court overruled, and adjudged the complaint sufficient, to which the petitioner excepted ; that thereupon such proceedings were had, that the court found

and placed upon the record the following facts, and made the following adjudication:

" Stebbins D. Walbridge, father of the parties, had, before the 20th of November, 1871, become poor and chargeable to the town of Bennington, and James H. Walbridge had assumed his support, and prevented him from becoming a charge to that town, and he has remained so poor and chargeable ever since, and been supported by the said James, assisted somewhat in that behalf by Henry S. Walbridge. No application for aid in his or their behalf to any town, was shown; and the said Stebbins has never been a charge to, or supported at all by, said town, but he is likely to continue so chargeable. Each of the parties has since that day been of sufficient ability to contribute to his support, and Henry S. Walbridge has contributed as much in that behalf as is judged reasonable, and Edward Walbridge has not contributed anything in that behalf; and support to the amount of sixty-five dollars would have been a reasonable contribution for him to have made for that purpose. It is proper that he should continue to live with James H. Walbridge, and reasonable that Edward Walbridge should contribute the weekly sum of one dollar and twenty-five cents, and Henry S. Walbridge the weekly sum of twenty-five cents, for his support; and the costs of this proceeding having been occasioned by the default and separate defence of Edward Walbridge, he is assessed in the sum of sixty-five dollars for the support of the said Stebbins, from said 20th day of November, hitherto, and the weekly sum of one dollar and twenty-five cents, and said Henry is assessed in the weekly sum of twenty-five cents, to be paid quarterly for the future support of the said Stebbins, and judgment for the petitioner is entered accordingly, and for his costs against Edward Walbridge "; to which decision the petitioner excepted; and exceptions were allowed, *pro forma.*

*A. B. Gardner* and *C. N. Davenport,* for the petitioner.

The motion to dismiss and the demurrer stand upon the same ground. The county court erred, both in denying the motion, and overruling the demurrer. There is no allegation in the complaint that Stebbins D. Walbridge had " become chargeable to any town." The averment is, "poor and unable to support himself by reason of age and infirmity, and would long since have been, and would still be, chargeable to the town of Bennington for his support," had not the complainant supported him, &c. To confer

jurisdiction upon the court, it must appear that the poor person is *chargeable to some town* in this state as a pauper. There is no common law obligation upon a child to support an infirm or indigent parent. The legal obligation so to do, is purely statutory. The purpose of the statute is not to enforce a moral duty, but, in the language of Chancellor KENT, "This feeble and scanty statute provision, was intended for the indemnity of the public against the maintenance of paupers." 2 Kent Com. 191; Reeve Dom. Rel. 285; *Edwards* v. *Davis*, 16 Johns. 281; *Weathersfield* v. *Montague*, 3 Conn. 507. The first statute provision ever enacted upon this subject in England, is the statute 43 Eliz. c. 2, which enacts: "The father and grandfather, mother and grandmother, and children of every poor, old, blind, lame, and impotent or other poor person not able to work, being of sufficient ability, shall, at their own charges, relieve and maintain every such poor person, in that manner and according to that rate, as by the justices of that county where such sufficient persons dwell, in their sessions, shall be assessed, on pain of 20 shillings a month." 3 Burn's Just. 429. A further statute providing for the case of absconding parents and husbands, was passed in the 5 Geo. I. c. 8, s. 3—Burn's Just. 433, 434. The statute of 43 Eliz was, in substance, re-enacted in Vermont in 1797. Slade's Sts., ch. 47, § 9. The material part of this section, for our present purpose, is—"*not able to support and maintain him or herself, and becoming chargeable to any town or place in this state.*" Not a case can be found in England where the statutes above cited, have ever been used for any other purpose than the relief of the parish to which the poor person is chargeable. *Parish of St. Andrews* v. *Mendex*, 1 Ld. Raym. 699; 3 Burn's Just. 433; 1 Bl. Com. 448; *Cooper* v. *Martin*, 4 East 76; *Stable* v. *Dixon*, 6 East, 163; Our present statute provisions first appear in their present form in the revision of 1840. The idea of indemnity to the town, is quite as prominent as in the act of 1797. The obvious meaning of the phrase, "*any poor person who shall become chargeable to any town*," is, *actually chargeable* to, and supported by, a town as a *pauper*. So too, the word *pauper*, as used in § 20 of our statute, has had a well understood legal signification for more than 200 years. Its

literal meaning is, *a poor person*.   Its legal meaning is, *a poor person who is a burden and charge upon a parish or town;* Jacob Law Dict. 193 ; Bouv. Law Dict. 320 ; *Hardwick* v. *Pawlet,* 36 Vt. 323.

If the court below had decided that this poor man was "likely to become chargeable," such a decision would not be error.   But the court overlooked the distinction, which is well defined, between the cases where the poor person is "actually chargeable," and "likely to become chargeable."   The cases which have arisen under the 4th section of chapter 20, illustrate the distinction. *Corinth* v. *Bradford,* 2 Aik, 120 ;    *Londonderry* v. *Acton,* 3 Vt. 122 ; *Ludlow* v. *Weathersfield,* 18 Vt. 39 ;    *Chelsea* v. *Brookfield,* 27 Vt. 587 ; *Dover* v. *McMurphy,* 4 N. H., 158.

We have been unable to find anything in the Vermont cases upon this subject, to support the idea that the instrumentalities afforded by the statute, can be used until the poor person actually becomes chargeable as a pauper.   Until that happens, the law leaves this duty to the promptings of parental and filial affection. *Bloomfield* v. *French,* 17 Vt. 79 ;  *Berlin* v.  *Morristown,* 20 Vt. 574 ;  *Woodstock* v. *Hartland,* 21 Vt. 563 ;  *Brattleboro* v. *Stratton,* 24 Vt. 306.   Nor can the decision of the county court be sustained upon the ground that the statute has imposed a duty upon these sons, and one having discharged it, a right to be reimbursed exists in his favor against the others    It is not true that he has discharged a statute duty.   He has simply discharged a moral duty due from a child to his parent.   The statute creates no duty, until the parent has " become chargeable as a pauper."

There is a class of cases where the attempt has been made to charge kindred liable to support paupers, in assumpsit for supplies furnished, upon the ground of this statutory duty or liability, as it is termed.   Some of the cases had also the element of an express promise to pay, after the supplies were furnished.   The express promise was uniformly held void for want of consideration, and the statute liability held of no avail, because the supplies were furnished to persons who were not, in a legal sense, paupers. *Edwards* v. *Davis, supra;   Cook* v. *Bradley,* 7 Conn. 57 ; *Lebanon* v. *Griffin,* 45 N. H. 588 ;  *Mills* v. *Wyman,* 3 Pick. 207 ;

*Loomis* v. *Newhall*, 15 Pick. 159. There is another class of cases where attempts have been made by towns, to recover of the person himself, when afterwards he became of sufficient ability, for support furnished when chargeable as a pauper. These actions have uniformly failed. *Selectmen of Bennington* v. *McGennes*, 1 D. Chip. 44; *Charlestown* v. *Hubbard*, 9 N. H. 195.

The defendant's counsel will probably rely upon the authority of a passage in Reeve Dom. Rel. 286, and the case of *Hutchins* v. *Thompson*, 10 Cush. 238. Reeve, in discoursing upon this subject, says : "So too where one child among several, supports his pauper parents, without application to the court for an assessment, he may maintain an action against each of his brothers or sisters who refuse to bear their portion of the support." What he thus says, is evidently his view of a construction of which the Connecticut statute is susceptible. He cites no authority, and none exists in that state. So far as we have examined, the Connecticut cases are in harmony with what we claim is the law of this case. In *Weathersfield* v. *Montague, supra*, Ch. J. Hosmer says: "A child is under no common law liability to support his parent. Undoubtedly, he is under a moral obligation to do it; but it is a duty of imperfect obligation. And the legal right to demand maintenance from a child by a parent, as well as the legal remedy to enforce it, depends exclusively on the statute." *Newton* v. *Danbury*, 3 Conn. 553 ; *Cook* v. *Bradley*, 7 Conn. 57 ; *Stone* v. *Stone*, 32 Conn. 142 The provisions of the Connecticut statute are materially different from ours. There is nothing in the language of their statute, which implies that a poor person must be actually chargeable to a town as a pauper, before the court can take jurisdiction to compel contribution. *Hutchins* v. *Thompson* would be an authority against us, if our statute was like that of Massachusetts. Their statute applies to the "kindred of poor persons" generally ; ours, to "the kindred of any poor person who shall become chargeable to any town."

This being a sessions proceeding, the proper remedy to correct the errors of the court below, is, by writ of certiorari or mandamus. *Rockingham and Grafton* v. *Westminster*, 24 Vt. 288; *Rand et als.* v. *Townsend*, 26 Vt. 670 ; *Woodstock* v. *Gallup*, 28 Vt.

587 ; *Hutchinson et al.* v. *Chester*, 33 Vt. 410 ; *Pomfret* v. *Hartford*, 42 Vt. 134 ; *Tyler* v. *Beacher et al.* 44 Vt. 648.

*W. S. Southworth*, for the defendant.

The writ prayed for is not granted of course, even where there has been some error. The writ is issued only where substantial wrong or injustice has ·been done to the petitioner in the court below. *Royalton* v. *Fox et al.* 5 Vt. 458 ; *Myers et al.* v. *Pownal*, 16 Vt. 415 ; *West River Bridge Co.* v. *Dix et al.* 16 Vt. 446 ; *Paine* v. *Leicester*, 22 Vt. 44 ; *Pomfret* v. *Hartford*, 42 Vt. 134.

The overruling of the motion to dismiss, and the final decision and the order thereon, were correct, and worked no wrong or injustice to the petitioner. The facts stated in the complaint, that the father was *poor* and *unable to support himself* by reason of age and infirmity, and would have been chargeable, &c., had not the defendant *supported*, and did he not *still support* him, were sufficient, if proved, to create an obligation on the petitioner to contribute, if of sufficient ability. These facts, substantially, were found by the county court, and that the petitioner *was* of sufficient ability.

The construction given by that court to § 19, ch. 20, Gen. Sts., is correct. The ordinary meaning of the word *chargeable*, when applied to the burden or imposition, is, *may be charged*. Such is its meaning in that section. It is conceded that the word as used in § 4, ch. 20, has a more technical meaning, and is equivalent to *charged*, or *a charge*. But it is used in its ordinary sense in other sections in this chapter, as in § 26, and probably in §§ 29 and 43. The statute is designed to place the burden of support upon the kindred if of sufficient ability. If the town is compelled to render aid, it is to be indemnified, and the statute gives the remedy. If, instead of the town, one of the kindred gives the support, the others, if of sufficient ability, must contribute, and the same statute gives him his remedy. The word *pauper*, used in § 19, does not indicate that the word *chargeable* is used in the technical sense. It is not itself so used. *Hutchins* v. *Thompson*, 10 Cush. 238.

The opinion of the court was delivered by

PECK, J. This is a petition for a writ of *certiorari* to be issued for the purpose of quashing the proceedings of the county court,

in which that court, on petition of James H. Walbridge against Edward Walbridge and Henry S. Walbridge, apportioned between the three, being brothers, the sum each should contribute to the support of their father, Stebbins D. Walbridge, under the statute on this subject. As the issuing of a writ of *certiorari* is, to a great extent, matter of discretion, the practice is to hear the merits of the case upon the petition for the writ, and practically decide the whole case upon the granting or refusing of the writ.

The objection which the petitioner urges against the judgment and order of the county court sought to be quashed, is, that it was not alleged and proved in that proceeding, that the town had actually incurred any expense for the support of the father of the parties. It is insisted on the part of the applicant for this writ, that no order can be made in any case upon any of the kindred, apportioning the amount each shall pay toward such support, either past or future, either on petition of the town or of any of the kindred, till the *town* has actually expended something for such support. The statute, among other things, imposes the duty upon every town, to " relieve and support all poor and indigent persons lawfully settled therein, whenever they shall stand in need thereof." Gen. Sts. ch. 20, § 1. Section 19 of the same chapter provides that " the kindred of any poor person, who shall become chargable to any town, in the line or degree of father or grandfather, mother or grandmother, children or grandchildren, by consanguinity, living within this state, and of sufficient ability, shall be bound to support such pauper in proportion to their respective ability." Section 20 of the same chapter, giving the remedy, provides that the county court in the county where any one of such kindred to be charged shall reside, upon complaint by any town or by any kindred who shall have been at any expense for the relief and support of such pauper, may, on due hearing, either upon the appearance or default of the kindred supposed to be chargeable, assess and apportion upon such of the kindred as they shall find of sufficient ability, and in proportion thereto, such sum as they shall judge reasonable for or towards the support of the pauper," &c. The argument of the petitioner for this writ of *certiorari*, is, that the liability and remedy given by § 19

and § 20, do not attach so as to give the right of any of such kindred to maintain the complaint given by § 20, against the others, till such " poor person" has become chargeable to the town ; and that the word *chargeable* in § 19, imports that the " poor person" has become charged upon the town by the town's having actually incurred expense for his support. It is true, that in proceedings under the provision of the statute authorizing towns to remove a person who " has or is likely to become chargeable to such town," a distinction in form has been made in the finding of the justices, between *chargeable* and *likely to become chargeable ;* a distinction, however, wholly immaterial to the right of the town to procure an order of removal. The word *chargeable*, in its ordinary acceptation as applicable to the imposition of a duty or burden, signifies, capable of being charged, subject to be charged, or liable to be charged, or proper to be charged, or legally liable to be charged. In this sense the word *chargeable* is used in § 19, creating the duty on the kindred therein named to support such " *poor person*," or " *such pauper*," in proportion to their respective ability. The word *chargeable*, in § 20, prescribing the mode of enforcing this duty upon the kindred, is used in this sense, giving the right to proceed against " *the kindred supposed to be chargeable*," that is, such as are supposed to be of the requisite degree of kindred, and of sufficient pecuniary ability to be legally liable to be charged with such support in whole or in part. The word *pauper*, used at the close of §19, does not necessarily imply a person who has actually received support from the town, as the word in this chapter is used indiscriminately to designate poor and indigent persons standing in need of relief, and poor persons likely to become chargeable, as well as such poor persons as have actually received support from the town. It is in this common and ordinary sense of the word *chargeable*, that the county court uses it in their finding of the facts in the original proceeding sought to be quashed. In this sense, that finding of the county court is free from that " *confusion of ideas* " attributed to it by the criticism of counsel. When the father of these brothers became poor and in need of relief, and in such a state of destitution that the town *should* and would have relieved him, but for the act of his son

James H., in affording the relief, James H. had the right to render the necessary aid, and resort to the statutory remedy to compel contribution. It was not necessary for him to go through with the useless and humiliating ceremony of refusing his father food and shelter, and compel him to receive support at the hands of the town, and then compensate the town therefor, in order to entitle himself to this remedy. It is to be noticed that our statute does not give the remedy exclusively to the town, but to the town or to " any kindred who shall have been at any expense for the relief and support of such pauper." To enable one of the kindred to maintain the complaint, it is not necessary for the town and such kindred both to have actually incurred expense for such relief and support. This view of the case upon the facts found by the county court, substantially disposes also of the objections to the original complaint, raised by the motion to dismiss and the demurrer to the complaint. The complaint is sufficient to sustain the judgment, although the ground of the relief sought is not set forth therein as specifically and accurately as in the finding of the court on trial. But even if the complaint and proceedings under it are open to the objection made, the objection is of a purely technical character, for which this court would not quash the order of the county court, when upon the whole record it appears that justice has been done in enforcing a legal obligation substantially according to law. The writ of *certiorari* is therefore denied, and the petition dismissed with costs.