CITY OF ST. ALBANS v. JOHN M. AVERY ET AL.

October Term, 1920.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 20, 1921.

*Certiorari—Merits Heard on the Petition—Trusts—Legal Title
in Trustee—Trust of Personalty May Be Created by Parol
—No Consideration Necessary—Reservation of Power to
Terminate Trust and to Control Investments Does Not Affect
Passing of Title to Trustee—Situs of Trust Fund for Taxa-
tion—Interest of Beneficaries Taxable Where They Reside—
Court Cannot Correct Legislative Omission in Failing to
Subject Taxable Properly to Taxation—Construction of Tax
Statutes—Interest of Beneficiaries Taxable Under Existing
Statutes—Elements to Be Considered in Valuing Trust In-
terest—Authorized Acts of Appraisers not Reviewable on
Certiorari—Office of Writ of Certiorari Stated—Independ-
ent Illegal Matter May Be Rejected—Unauthorized Judg-
ment of Appraisers—Constitutional Questions Raised Saved
by Decision—Rehearing not Granted to Permit Raising of
New Questions.*

1.  The issuance of a writ of *certiorari* being largely a matter of dis-
    cretion, the practice is to hear the merits of the case upon the
    petition, and practically to decide the whole case upon the
    granting or refusing of the writ.
2.  The legal title to a trust fund created by the transfer of title to,
    and delivery of, securities to a trust company for the benefit of
    the settlors, is in the trustee.
3.  A vaid trust of personal property may be created by parol, and no
    consideration therefor is necessary.
4.  The reservation by the settlors of a trust fund of power to
    terminate the trust does not affect the passing of title to the
    trust fund to the trustee, nor the continuance of the trust,
    until the power is exercised, nor does the reservation of
    authority to control the investment of the trust fund, under
    certain circumstances, defeat the vesting of the legal title in
    the trustee.

5. Where the title to, and the possession of, the corpus of a trust fund is in the trustee, whose domicile is in Massachusetts, in the absence of statutory provisions to the contrary, its situs, for the purpose of taxation, is in Massachusetts.

6. The interest of the beneficiaries in and to a trust fund created by themselves by conveying certain securities to a foreign trust company, they having the power to control, absolutely, the character of the securities comprising the fund, and to terminate the trust at will, is "property" which the Legislature may subject to taxation.

7. If the Legislature fails by proper enactment to subject taxable property to taxation, the court cannot correct the omission.

8. Although the Legislature must select the subjects of taxation and make that selection effective by necessary regulations for assessment, every species of property need not be specifically named for taxation, general words of description being sufficient, as the question is one of determining the legislative intent by the ordinary rules of statutory construction.

9. The courts will presume that the Legislature, in enacting a tax statute, intended to carry out the directions of the Constitution, and will so construe the statute whenever such construction is admissible.

10. The taxation of the property interest of beneficiaries in a trust fund located outside the State is embraced in the statutory provisions (G. L. 13,667,682) providing for the taxation of "personal estate," without specific enumeration; the exemptions enumerated in G. L. 684 not covering the property interest of a *cestui que trust* under a trust agreement.

11. The provisions of G. L. 703, subd. V., relative to the listing of trust funds, apply only to the corpus of trust funds within the State when either the *cestui que trust* or the trustee, or both, reside in the State, and leaves the property interests of beneficiaries in a trust having the trustee in another state to be listed to them in the town, etc., where they reside, under the general provisions of G. L. 703.

12. In determining, for taxation, the value of the property interest in a trust fund of the beneficiaries, who created such trust in their own favor, the amount of the fund, the nature of the securities comprising it, and the extent of their right to control and enjoy the same are elements to be considered.

13. If, on an appeal from an assessment made by listers under G. L. 780, the appraisers, appointed under G. L. 843, acted within the scope of their authority in reducing the valuation of the listers, the Court will not enquire into the correctness of their action on *certiorari* proceedings.

14. The office of the writ of *certiorari* is to provide for a review of the judicial action of inferior courts, special tribunals, public officers, and bodies exercising judicial functions, in those instances where no other means of review is provided.

15. In such proceedings, where the order or judgment under review consists of distinct determinations, or legal and illegal matters, which are so independent of, and disconnected with, each other that part may be quashed, and leave the remainder an entire, beneficial, and available judgment for the purpose for which it was intended, that which is erroneous may be quashed, and the remainder affirmed.

16. Since the proper finding by the appraisers that the assessment by the listers was too high, and the amount that it should be reduced, and their illegal finding that the listers did not have jurisdiction to make the assessment, concerned separate and independent issues, and the latter finding can be rejected without affecting the validity and force of the former, the former finding will be sustained, and the illegal finding quashed or set aside.

17. Under G. L. 850, fixing the authority of appraisers appointed pursuant to G. L. 843, the appraisers have no power to allow or disallow an appeal, and their adjudication that an appeal from an assessment by listers "should be" and "is sustained" has no force, except, perhaps, as a finding on that question.

18. The holding by the Court that under the circumstances stated in the opinion the interest of the beneficiaries in the trust agreement was taxable in the city of their residence saved them the benefit of such constitutional questions as they had properly raised, including their claim of rights under the Fourteenth Amendment to the Federal Constitution.

19. A rehearing to permit new questions to be raised, or questions previously raised to be presented anew, will not be granted.

PETITION for a writ of *certiorari*, brought to the Supreme Court for Franklin County, to review the proceedings of ap-

praisers appointed by the Tax Commissioner under G. L. 843. The opinion states the case.

Roswell M. Austin and Charles H. Darling for the petitioner.

George M. Hogan, Alexander Dunnett, Charles A. Shields, and Marvelle C. Webber for the petitionees.

SLACK, J.   This is a petition for a writ of *certiorari* to review the proceedings of appraisers appointed pursuant to G. L. 843, re the appeal of the petitionees Florence H. Bruce, Gertrude E. Fonda, Frank W. Fonda, Mary F. Hogan, and Howard R. Fonda under G. L. 842.   The petitionee Avery is commissioner of taxes within and for this State, and the petitionees Brigham, Fairchild and Webster are the appraisers above mentioned.   The regularity of the proceedings before the appraisers is not questioned.   The case was heard here on the petition and answer.

[1]   As the issuing of the writ prayed for is largely matter of discretion, the practice is, in this State, to hear the merits of the case upon the petition, and practically to decide the whole case upon the granting or refusing of the writ.   *Walbridge* v. *Walbridge,* 46 Vt. 617; *Stevens* v. *Hill,* 74 Vt. 164, 52 Atl. 437; *Davidson* v. *Whitehill et al.,* 87 Vt. 499, 89 Atl. 1081.

The main question here is whether the beneficiaries, under the arrangement presently to be noticed, have property, or property rights, in such arrangement liable, under the laws of this State, to taxation in the City of St. Albans.

W. B. Fonda died intestate at his home in that city February 26, 1917, leaving a large estate consisting mostly of mortgages, bonds, stocks, notes, *et cetera.*   He left as heirs a brother, two sisters, a nephew, and a niece, all then and now residents of St. Albans.   His estate was probated in the district of Franklin, Vermont; and decree of final distribution was entered December 14, 1917.   Under the decree the brother and sisters each received one-fourth, and the nephew and niece each received one-eighth of the estate.

February 5, 1918, all the heirs joined in a written declaration of trust with the Old Colony Trust Company of Boston, Massachusetts, as trustee, by the terms of which they sold, assigned, and transferred to the trustee a large part of the intangible property received by them from the Fonda estate, and exe-

cuted such transfers as were necessary to pass their title to the trustee, to each of the securities that went into the trust fund, and three days later delivered such securities to the trustee in Boston.   None of the trust property has since been in this State; and the beneficiaries received no income therefrom prior to April 1, 1918.

The object of the trust arrangement is to keep the greater portion of the Fonda estate intact, under efficient management, for the purpose of providing an assured income for the benefit of each of the settlors during life, and thereafter for the benefit of the several persons and classes of persons therein named.   For its services in executing this trust the trustee is to receive a reasonable commission.

The trustee has authority to sell, convert, invest, and reinvest the trust fund in its sole discretion, provided that before so doing it shall notify the then surviving settlors, if three of their number be living, and, if a majority so request, in writing, it shall retain such securities in their then form.   The trust may be terminated at any time when persons then entitled to receive three-fourths of the total net income distributable under the agreement file with the trustee a written notice to that effect, signed and sealed by them.   Other ways, not necessary to be noticed, are provided for terminating the trust; and, unless terminated in one of the ways provided, it shall terminate twenty years after the death of the survivor of certain named persons. The agreement also provides what shall become of the trust fund and net accumulated income whenever the trust is terminated.

[2]    The legal title to this fund is unquestionably in the trustee.   *Williams* v. *Haskins' Est.*, 66 Vt. 378, 29 Atl. 371; *Wade, Admr.* v. *Button et al.*, 72 Vt. 136, 47 Atl. 406.

[3]    A valid trust of personal property may be created by parol, and no consideration therefor is necessary.   *Williams* v. *Haskins' Est., supra.*

[4]    The reservation by the settlors of power to terminate the trust does not affect the passing of title to the property, nor the continuance of the trust, until the power is exercised.   *Jones* v. *Clifton,* 101 U. S. 225, 25 L. ed. 908; *Seaman* v. *Harman,* 192 Mass. 6, 78 N. E. 301.   Nor does the reservation of authority to control the investments, under certain circumstances, defeat the vesting of the legal title in the trustee.   *Hart et al.* v. *Seymour et al.,* 147 Ill. 598, 35 N. E. 246.

[5] The title to, and the possession of, the corpus of this fund being in the trustee, in the absence of statutory provisions to the contrary, its situs, for the purpose of taxation, is in Massachusetts. There are well recognized exceptions to the rule *mobilia sequuntur personam,* even when applied to intangibles. Debts for the purpose of taxation may under certain conditions have a situs at the residence of the debtor as well as of the creditor. *Liverpool & London & Globe Ins. Co.* v. *Orleans Assessors,* 221 U. S. 346, 354, 55 L. ed. 762, 31 Sup. Ct. 550, L. R. A. 1915 C, 903. So, too, shares of stock in corporations may, by express statute, have a taxable situs at the domicile of the corporation as well as at the residence of the shareholder. *Corry* v. *Mayor & Council of Baltimore,* 196 U. S. 466, 49 L. ed. 556, 25 Sup. Ct. 297; *Bellows Falls Power Co.* v. *Commonwealth,* 222 Mass. 51, 109 N. E. 891, Ann. Cas. 1916 C, 834. See also, *Catlin* v. *Hull,* 21 Vt. 152. And other exceptions may be found. But the general rule still obtains that intangibles have a taxation situs, and in practice usually their only taxation situs, at the residence of the owner. *Town of St. Albans* v. *National Car Co.,* 57 Vt. 68; *State* v. *Clement National Bank,* 84 Vt. 167, 199, 78 Atl. 944, Ann. Cas. 1912 D, 22; *National Metal Edge Box Co.* v. *Town of Readsboro,* 94 Vt. 405, 111 Atl. 386; *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 62 L. ed. 145, 38 Sup. Ct. 40, L. R. A. 1918 C, 124; *Maguire* v. *Tax Commissioner,* 230 Mass. 503, 120 N. E. 162. We think the corpus of this fund falls within the general rule, rather than within any of the exceptions.

It by no means follows, however, that the beneficiaries have no property or estate under this arrangement that is taxable in this State.

That they have an equitable estate in this fund is admitted. In Pomeroy's Equity Jurisprudence, Vol. II, par. 992, the author says that the fourth class of active trusts includes, "all those trusts of which the primary object is to hold the corpus of the property, receive the rents, profits and income, and apply them to some prescribed uses." Such is the trust under consideration. He then continues: "In instances of the third and fourth classes, the beneficiaries may have a direct equitable interest in the trust property itself, which is plainly more than a *mere* right of action." Mr. Justice Lamar in *Brown* v. *Fletcher,* 235 U. S. 589, 599, 59 L. ed. 374, 35 Sup. Ct. 154, says: "The beneficiary here had an interest in and to the property that was more than a

bare right and much more than a chose in action. For he had an admitted and fixed right to the present enjoyment of the estate with a right to the corpus itself when he reached the age of fifty-five." In *Williston Seminary* v. *County Commissioners,* 147 Mass. 427, 18 N. E. 210, it is said: "The word 'property', in its ordinary legal signification, 'is *nomen generalissimum,* and extends to every species of valuable right and interest. * * * An ordinary *cestui que trust* has a property in a fund held for his benefit; he has a right and interest which he may vindicate in various ways. * * * But especially in the present case the property held in trust is to all practical intents and purposes the property of the seminary. The legal title is in the trustees; but the whole beneficial interest, unless, indeed, the annuitants are to be taken into account, is in the seminary." And in *Larkin* v. *Wikoff,* 75 N. J. Eq. 462, 72 Atl. 98, 79 Atl. 365, the court speaks of the beneficiary's interest thus: "*The cestui que trust* is the real, substantial, and beneficial owner of an estate which is held in trust as distinguished from the trustee in whom the mere legal title is vested."

In the instant case the beneficiaries are the equitable owners, indeed, they are the substantial owners, of the trust fund. They have the power to control, absolutely, the character of the securities comprising the fund, and to terminate the trust at will. They actually owned these securities yesterday, so to speak, and may tomorrow, if they so elect; and the entire income, less the trustee's commission for executing the trust, belongs to them. To say that, possessed of the interest and rights which they have under this arrangement, they have no "property," that they are not "worth anything" is absurd.

[6]    We think this interest is property which the Legislature may subject to taxation. *Hunt* v. *Perry,* 165 Mass. 287, 43 N. E. 103; *Bates* v. *Boston,* 5 Cush. (Mass.) 93; *Williston Seminary* v. *County Commissioners,* 147 Mass. 427, 18 N. E. 210; *Hathaway* v. *Fish,* 13 Allen (Mass.) 267; *Maguire* v. *Tax Commissooner,* 230 Mass. 503, 120 N. E. 162; Id. 253 U. S. 12, 64 L. ed. 739, 40 Sup. Ct. 417; *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 62 L. ed. 145, 38 Sup. Ct. 40, L. R. A. 1918 C, 124; 32 Harvard Law Review, 587, 619. See also, *Selden* v. *Brooks,* 104 Va. 832, 52 S. E. 632; *Wise* v. *Commonwealth,* 122 Va. 698, 95 S. E. 632; *Brooklyn Trust Co. et al.* v. *Booker,* 122 Va. 680, 95 S. E. 664.

These cases, although the statute before the court in each was unlike ours, clearly show the power of the Legislature to tax the interest of the beneficiaries under this arrangment.

When *Hunt* v. *Perry,* a leading authority on this question, was decided, a statute of Massachusetts provided that persons entitled to the income of personal property held by others in trust for them were liable to be taxed for the capital or principal sum in the town where they resided; and, if the trustee was not an inhabitant of that state, the property held in trust should be assessed to the person to whom the income was payable in the town where he resided. The beneficiary resided in that state. The trustee resided in Maine, and held the trust property under a will of a former resident of that state, and the corpus of the fund was outside of Massachusetts. The court, discussing the taxability of the beneficiary's interest under this statute, said: ''The statute under consideration rests on the ground that the *cestuis que trustent* residing here have a beneficial interest in the trust fund which is valuable, and that they are, in effect, the equitable owners thereof. An interest of this kind is property, which the Legislature may subject to taxation. *Bates* v. *Boston,* 5 Cush. 92; *Williston Seminary* v. *County Commissioners,* 147 Mass. 427; *Hathaway* v. *Fish,* 13 Allen 267.* * * The defendants contend that the statute, if such is its true construction, is unconstitutional. This argument rests on the ground that the property is situated out of the state; that the beneficial interest of a *cestui que trust* is nowhere else made taxable; and that this statute selects for taxation a kind of interest not otherwise taxable, and so imposes a tax which is disproportionate. This argument, however, is met by the suggestion already made that the *cestui que trust* is here, and his ownership or title is here, namely, the right to the income of the trust fund. The fact that the corpus of the trust fund is held by trustees who live elsewhere, and who hold under a will proved and allowed elsewhere, does not take away the power of the Legislature to subject the interests of the *cestuis que trustent* to taxation here, if they live here.''

This doctrine was affirmed in *Maguire* v. *Tax Commissioner,* where the constitutionality of the Massachusetts Income Tax Law was considered and upheld. In that case the beneficiary resided in Massachusetts. The trustee resided, and had actual possession of the securities comprising the trust fund, in Pennsylvania. It

was claimed that a tax assessed on income derived from securities not taxed or taxable to the trustee in Pennsylvania, under the laws of that state, was invalid, because the law under which it was assessed was unconstitutional, in that it operated to 'take the petitioner's property without due process of law, and in other respects violated her fundamental rights. In discussing this question the court said: ''The question whether the nature of the right of a *cestui que trust* in a trust held in a sister state is such as to be subject to taxation here was before this court in *Hunt* v. *Perry.*'' It then quotes that portion of the opinion in that case which we have quoted above, and adds: ''It does not seem to us that the soundness of the ground of that decision stated in the words quoted has been shaken by subsequent decisions. * * * These decisions of the United States Supreme Court relied upon by the petitioner do not appear to us to have wrought such ruin with the long-established practice as to taxation in this Commonwealth as she contends. Indeed the soundness of the reasoning of the opinion in *Hunt* v. *Perry,* 165 Mass. 287, already quoted, appears to us to be sustained in principle by the most recent pronouncement of that court upon the subject in *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54. That case had to do with the validity of a tax assessed by a municipality in Kentucky upon one of its residents upon money deposited in a bank in Missouri, derived from business there conducted and standing to his credit alone. It was conceded that these deposits were subject to taxation in Missouri. In the opinion upholding the validity of the tax in Kentucky it was said: 'The present tax is a tax upon the person, as is shown by the form of the suit, and is imposed, it may be presumed, for the general advantage of living within the jurisdiction. These advantages, if the state so chooses, may be measured more or less by reference to the riches of the person taxed. Unless it is declared unlawful by authority we see nothing to hinder the state from taking a man's credit into account. * * * It is unnecessary to consider whether the distinction between a tax measured by certain property and a tax on that property could be invoked in a case like this. *Flint* v. *Stone--Tracy Co.,* 220 U. S. 107, 146, 162, *et seq.* Whichever this tax technically may be, the authorities show that it must be sustained.' '' The judgment in *Maguire* v. *Tax Commissioner* was affirmed by the Supreme Court of the United States, 253 U. S. 12, 64 L. ed. 739, 40 Sup. Ct. 417, where Mr. Justice Day,

17

speaking to the subject under consideration here, said: "It is true that the legal title of the property is held by the trustee in Pennsylvania. But it is so held for the benefit of the beneficiary of the trust, and such beneficiary has an equitable right, title, and interest distinct from the legal ownership. 'The legal owner holds the direct and absolute dominion over the property in view of the law; but the income, profits, or benefits thereof in his hands belong wholly, or in part, to others.' 2 Story Eq. (11th ed.) § 964. It is this property right belonging to the beneficiary, realized in the shape of income, which is the subject-matter of the tax under the statute of Massachusetts. The beneficiary is domiciled in Massachusetts, has the protection of her laws, and there receives and holds the income from the trust property. We find nothing in the Fourteenth Amendment which prevents the taxation in Massachusetts of an interest of this character, thus owned and enjoyed by a resident of the state."

When the Virginia cases cited were decided a statute of that state provided: "If the property is the separate property of a person over twenty-one years of age, or a married woman, it shall be listed by and taxed to the trustee, if any they have; and if they have no trustee it shall be listed by and taxed to themselves. In either case it shall be listed and taxed in the county or corporation where they reside. * * * If the property is held * * * for the benefit of another, it shall be listed by and taxed to the trustee in the county of his residence (except as hereinbefore provided)." In each of the Virginia cases the court sustained a tax assessed in the name of a nonresident trustee, who kept the securities in which the trust fund was invested in his possession outside the state, in the municipality where the beneficiary resided. It was said in *Seldon* v. *Brooks:* "Though the tax is assessed in the name of the trustee, the burden is, in reality, imposed upon the beneficial owner, a resident of the commonwealth, who enjoys the protection of its laws along with other citizens, and ought, in fairness, to contribute her due proportion of revenue for the support of the government. * * * The contention that the construction indicated would render the statute unconstitutional proceeds upon the hypothesis that the tax is against the nonresident trustee, whereas he is personally unaffected by the imposition, and is but the conduit through the medium of which the tax upon the property of a citizen passes into the state treasury. *Hunt* v. *Perry*, 165 Mass. 287, 43 N. E.

103; *Lewis* v. *County of Chester*, 60 Pa. St. 325." And this is the ground upon which the later cases in that state rest. It is clearly implied by what was said by Mr. Justice Gray in *Dallinger* v. *Rapello* (C. C.) 14 Fed. 32, and 15 Fed. 434, that a tax against the beneficiary in the state of his residence for his interest in a trust fund held by a nonresident trustee in one of the sister states of his residence would be valid. See also, *Brown* v. *Fletcher, supra.*

It is not clear whether the tax in the Virginia cases was assessed on the corpus of the fund, or on the interest of the *cestui* therein under the trust arrangement, as in the Massachusetts cases. We think the latter the more logical, and, indeed, the only tenable ground upon which the beneficiary can be taxed.

[7] This brings us to the question whether the statutes of this State defining what property may be taxed, to whom and where, are sufficient to cover the interest of these beneficiaries under the trust agreement, because, although the Legislature has the power to subject this property to taxation, if it has failed by proper enactment to do so, the court cannot correct the omission. *New Orleans* v. *Stempel*, 175 U. S. 312, 44 L. ed. 174, 20 Sup. Ct. 110.

[8-10] Our whole scheme of taxation rests upon the theory stated in the Constitution (Chapter I, Article 9): "That every member of society hath a right to be protected in the enjoyment of life, liberty, and property, and therefore is bound to contribute his proportion towards the expense of that protection." A careful study of the legislation in our State touching taxation shows that the thought embodied in the Constitution quoted has ever been uppermost in the minds of our lawmakers; to distribute the burden of taxation equably has been their constant aim. That they have appeared to fail at times must be admitted; but, considering the magnitude of the task, the results attained compare very favorably with those in other jurisdictions.

General Laws, section 682, provides: "All real and personal estate shall, except as otherwise provided, be set in the list at one per cent. of its value in money on the first day of April of the year of its appraisal." By section 684 certain property, real and personal, is declared to be exempt from taxation. As to such property it is "otherwise provided" within the meaning of the former section. Section 667 provides: "The words 'taxa-

ble property' as used in this title [title Public Revenue], shall include taxable estate, both real and personal, including choses in action.'' And section 13 provides: ''The words 'personal estate' shall include all property other than real estate.'' See *Bellows* v. *Admr. of Allen*, 22 Vt. 108.

It is apparent from these provisions of the statute that the Legislature intended that *all* property within the State, not declared to be exempt, should be subject to taxation, and that for this purpose everything should be considered personal property except real estate.

A statute more simple in terms or more workable in its administration is seldom found. No attempt is made to enumerate either the tangible or the intangible personalty, because *all* of both, not covered by the exemptions, are embraced in these statutory provisions. *State* v. *Anderson*, 90 Wis. 550, 63 N. W. 746; *State* v. *Kidd*, 125 Ala. 413, 28 So. 480; *State* v. *Holcomb*, 81 Kan. 879, 106 Pac. 1030, 28 L. R. A. (N. S.) 251; *Commercial Electric Light, etc., Co.* v. *Judson*, 21 Wash. 49, 56 Pac. 829, 57 L. R. A. 78.

While the Legislature must select the subjects of taxation and make that selection effective by necessary regulations for assessment, this does not mean that every species of property must be specifically named for taxation. General words of description are sufficient, as the question is one of determining the legislative intent by the ordinary rules of statutory construction. General words in any instrument or statute are strengthened by exceptions, and weakened by enumerations. The courts will also presume that the Legislature intended to carry out the directions of the Constitution, and will so construe the statute, whenever such construction is admissible. Judson on Taxation, par. 432.

Concerning the exemptions enumerated in section 684 it is sufficient to say they do not cover the property interest of a *cestui que trust* under a trust agreement.

[11]   Another reason urged against the taxability of this property is that the statute does not provide to whom, or where, it shall be listed.

General Laws, section 703, provides: ''Taxable personal estate shall be set in the list to the last owner thereof on the first day of April in each year, in the town, village, school and fire district where he resides, with the following exceptions.'' The exceptions are : (1) Certain tangible personal property used in

manufacture; (2) personal estate used in a partnership business; (3) certain live stock; (4) not necessary to be noticed; and (5) "personal estate not embraced in subdivisions one, two, and three of this section, held in trust, * * * the income of which is to be paid to another person, shall be set in the list to the person holding it in trust, in the town, village, school and fire district where such other person resides, if he resides in this State, otherwise to the person holding it in trust in the town, where he resides."

We need only to notice the provisions of the latter subdivision, and as to these we adopt the views of the beneficiaries, and hold that they apply only to trust funds located within the State when either the *cestui que trust* or the trustee, or both, reside here. *City of Augusta* v. *Kimball,* 91 Me. 605, 40 Atl. 666, 41 L. R. A. 475; *Anthony* v. *Caswell,* 15 R. I. 159, 1 Atl. 290.

But these provisions relate solely to the corpus of the fund, and leave the property interest of the beneficiaries under the trust agreement to be listed to them in the town, *et cetera,* where they reside, under the general provisions of section 703. It is not apparent where else, logically, this interest could be listed.

[12] The beneficiaries having failed to include this property—*i. e.,* their interest in the trust—in their inventories, it became the duty of the listers under G. L. 780, to ascertain its nature and extent as best they could and set the same in the grand list of such persons at its value in money. In determining the value of such interest, the amount of the trust fund, the nature of the securities comprising it, and the extent of the beneficiaries' right to control and enjoy the same were elements to be considered. Mr. Pomeroy in his work cited above, at paragraph 991, says: "The extent and incidents of the rights held by the respective parties [the trustee and *cestui*] must, of course, vary with the nature of the trust itself and the duties which the trustee is called upon to perform." The interest of a *cestui* in a trust fund that he can control and may become the absolute owner of at will may be nearly or quite as valuable as the fund itself. But these are elements solely for the consideration of the persons or board making the assessment, and do not concern us in these proceedings.

[13] The appraisers found that the valuation of the listers in the instant case should be reduced $15,840.62, because in making the same they took into consideration certain nontaxable securities. The petitioner claims that this finding was not justi-

fied by the evidence. But if the appraisers acted within the scope of their authority in considering the amount of the valuation, a question not raised, and therefore not passed upon by us, we will not inquire into the correctness of it on this petition. *Davidson* v. *Whitehill et al.*, 87 Vt. 499, 508, 89 Atl. 1081.

The appraisers found that the declaration of trust vested the legal title to the trust fund in the trustee; that that arrangement was in force April 1, 1918, and that the legal situs of the trust property was then in Boston. These findings are in accord with the views herein expressed. They then found as a "corollary" of the findings last mentioned that the listers did not have jurisdiction to make the special assessment against the beneficiaries. This is contrary to the views herein expressed, and is error. The assessment made by the listers, less the amount the appraisers found such assessment ought to be reduced, should have been sustained.

It remains to be considered whether a judgment can be entered in these proceedings that will accomplish this result, or whether the proceedings before the appraisers must be quashed *in toto*, leaving the beneficiaries to such further proceedings, if any, as they may be advised.

[14, 15]   The office of the writ of *certiorari* is to provide for a review of the judicial action of inferior courts, special tribunals, public officers, and bodies exercising judicial functions, in those instances where no other means of review is provided. *Rutter et al.* v. *Burke et al.*, 89 Vt. 14, 93 Atl. 842. This remedy is intended mainly to answer the objects and ends, which are reached by writ of error, in those cases where that writ lies; that is, to revise the proceedings of inferior tribunals in matters of law. *Paine* v. *Town of Leicester*, 22 Vt. 44. And when the order or judgment under review consists of distinct determinations, or legal and illegal matters, which are so independent of, and disconnected with, each other that part may be quashed, and leave the remainder an entire, beneficial, and available judgment for the purpose for which it was intended, the Court may quash that which is erroneous, and affirm the remainder. This was done in *Claflin* v. *Hubbard*, Brayton, 38, where the county court rendered judgment for costs in favor of the defendant in bastardy proceedings, since it was found that he was not chargeable, and the order or judgment ,so far as it related to costs, was quashed by this Court. This practice was recognized, too, in

*Moore et al.* v. *Town of Chester,* 45 Vt. 503, where it was said: "The prayer of the petition to this Court, as it originally stood, was not exactly proper, because it asked that a writ of *certiorari* might issue, which is adapted to quashing the whole or some distinct part of erroneous or irregular proceedings, but not to require further proceedings." See, also, *Town of Pomfret* v. *Town of Hartford,* 42 Vt. 134. In *Commonwealth* v. *Blue Hill Turnpike Corp.,* 5 Mass. 420, the verdict of a jury impaneled to inquire into the damages sustained by a landowner by the location of the turnpike was ordered to be recorded by the court of sessions, and it further ordered that the sum assessed be paid by the corporation within six months, and that in default thereof a warrant of distress be levied on the personal property of the proprietors. On *certiorari* the order, so far as it related to the recording of the verdict and the payment by the corporation, was affirmed, and the order relating to the warrant of distress was adjudged bad. See, also, *Commonwealth* v. *Carpenter,* 3 Mass. 268; *Commonwealth* v. *Derby,* 13 Mass. 433; *Commonwealth* v. *West Boston Bridge,* 13 Pick. 195.

In *Shafer* v. *Hogue,* 70 Wis. 392, 35 N. W. 928, it was held on *certiorari* that, where it appeared in a log lien attachment that the proceedings of the inferior court were correct as to the personal judgment against the defendant, but were erroneous as to the adjudication of a lien on the logs, that part of the judgment giving a lien should be quashed, and the remainder affirmed.

In *Walker* v. *Hillyer,* 124 Ga. 857, 53 S. E. 313, Hillyer obtained judgment in a justice court against Walker and wife on a promissory note signed by both, the wife resisting the claim on the ground that she was a mere surety. The Walkers brought a petition for *certiorari* to the superior court, where, after hearing, the petition was sustained as to the wife, but dismissed as to Walker, and judgment was rendered against him. This was affirmed by the Supreme Court.

In *Rex* v. *Inhabitants of Madley,* 2 Strange 1198, an order relating to the settlement of the parents and a child was quashed as to the child and affirmed as to the parents.

In *The King* v. *Hale,* Cowp. 728, the defendant's cart and horses had been employed in moving smuggled tea, and the tea, cart, and horses were adjudged to be forfeited, and the defendant was sentenced to forfeit treble the value of the tea for concealing it. There being no evidence that he had concealed the tea, the

conviction was quashed as to the treble value, and affirmed as to the rest. *New Jersey, etc., Co.* v. *Suydam,* 17 N. J. Law 25; *Robinson* v. *Hedges,* 3 N. J. Law 262; *Barnes* v. *Robinson,* 4 Yerg. (Tenn.) 185; *Williams* v. *Sherman,* 15 Johns. (N. Y.) 195; *Bronson* v. *Mann,* 13 Johns. (N. Y.) 460.

[16]     We think that the case before us may be properly disposed of in like manner. The appraisers found that the assessment made by the listers was too high, and the amount that it should be reduced. They also found that the listers did not have jurisdiction to make such assessment. These findings concern entirely separate and independent issues, and the rejection of the latter cannot, in the least, affect the validity and force of the former. The former ought to be sustained and the latter ought to be quashed or set aside.

[17]     These are the only findings that control or affect the disposition of the case. The adjudication, by the appraisers, that the appeal "should be" and "is sustained" can have no force, except, perhaps, as a finding on that question. But the record shows that it is a mere legal conclusion, and not supported by the findings on which it is based. Besides, a judgment by the appraisers allowing or disallowing an appeal is unauthorized by statute, and therefore void. Their authority is purely statutory, and their jurisdiction and action are limited and controlled by statute. They "may raise or lower an appraisal made by listers or the board of civil authority," and "shall determine the questions * * * submitted to them * * * by said commissioner * * * and report their findings to him in writing." G. L. 850. This is the extent of their authority.

*Petition sustained, issuance of writ ordered, and, the proceedings being certified to this Court, ordered that the finding of the appraisers that the listers did not have jurisdiction to make the assessment appealed from be quashed, and that the finding that such assessment be reduced by the sum of $15,840.62 be affirmed. Let the judgment be certified to the Commissioner of Taxes to be forwarded to the clerk of the City of St. Albans as the law directs.*

ON MOTION FOR REARGUMENT, ETC.

On the reading of the opinion as originally drawn it was ordered that the petitioner have leave to amend the prayer of its

petition within a time fixed, if so advised, by adding thereto a prayer for a writ of mandamus, and that thereupon a writ of mandamus in the nature of a *procedendo* should issue to the Commissioner of Taxes requiring him to proceed with the appeal *de novo,* in accordance with the provisions of the statute, wholly disregarding the doings and findings of the former appraisers. On leave granted, counsel for the beneficiaries filed a motion for leave to amend their answer, after the amendment to the prayer of the petition had been filed, and also a motion for reargument. These motions are considered in inverse order.

The first ground urged for reargument is the claim that we failed to consider the rights of the beneficiaries under the Fourteenth Amendment to the Federal Constitution. This claim is without merit. While we did not discuss this question in direct and positive terms, we held that in the circumstances stated in the opinion the interest of the beneficiaries in the trust agreement was taxable in St. Albans.

[18, 19]    This, on the authorities cited by the beneficiaries in support of this motion, saves them the benefit of such constitutional questions as they have properly raised. *Crowell* v. *Randell,* 10 Peters 368, 9 L. ed. 458; *Murry* v. *Charleston,* 96 U. S. 432, 24 L. ed. 760; Loveland on Appellate Jurisdiction, 658, par. 322. A reargument of such questions is therefore unnecessary; and a rehearing to permit new qustions to be raised, or questions previously raised to be presented anew, will not be granted. *State* v. *Franklin County Savings Bank & Trust Co.,* 74 Vt. 246, 52 Atl. 1069; *Van Dyke & Drew* v. *Cole,* 81 Vt. 379, 70 Atl. 593, 1103; *Cunningham et ux.* v. *Blanchard et al.,* 85 Vt. 494, 83 Atl. 469; *State* v. *Monte,* 90 Vt. 566, 99 Atl. 264; *Rice & Bugbee* v. *Bennington County Savings Bank,* 93 Vt. 493, 108 Atl. 708.

The next reason urged for a rehearing is the claim that the listers assessed the beneficiaries on the corpus of the trust fund, and not on their interest in the trust agreement, and that consequently to hold them liable for taxes on the latter in these proceedings is to deprive them of their property without due process of law, because they have had no opportunity to be heard on the question of the taxability of their interest in the trust agreement. This question is now raised by the beneficiaries for the first time and therefore falls within the rule laid down in the cases last cited. The beneficiaries do not claim, nor can they, that they were surprised concerning this question, because the petitioner

made the claim in its brief and in oral argument, that they had an equitable interest under the trust arrangement that was taxable. It is said in *Whiting* v. *Rowell*, 82 Cal. 635, 23 Pac. 40, 382, cited in *Cunningham et ux.* v. *Blanchard et al., supra,* that if parties do not take the trouble to call attention to the points on which they rely, they cannot reasonably expect the Court to grant a rehearing for the purpose of considering them piecemeal. This is a salutary rule, applicable to this case.

The beneficiaries denied the authority of this Court to make the order following the opinion as first written, and asked to be heard on that question. Since the order and that part of the opinion relating to the disposition of the case have been changed, there is no foundation for the objection relied upon. Further consideration of this question is therefore unnecessary.

The ground for amending the answer, in the particular indicated, no longer exists.

*Both motions are denied.*