In the Matter of the Appraisal under the Transfer Tax Act of the Estate of LEONARD J. GORDON, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; WILLIAM E. GORDON et al., as Executors, et al., Respondents.

TRANSFER TAX—POLICY ISSUED UPON LIFE OF NON-RESIDENT OF STATE — WHEN PROCEEDS THEREOF NOT SUBJECT TO TAXATION WITHIN THIS STATE. The proceeds of a life insurance policy, issued upon the life of a non-resident by a domestic corporation and payable to the estate of the insured at the principal office of the company within this state, should be regarded as property within the state of decedent's residence rather than property within this state, and, therefore, not subject to a transfer tax under subdivision 2 of section 220 of the Tax Law (L. 1896, ch. 908, § 220), relating to the taxation of property of non-resident decedents within this state; where it appears that the insured was a resident of a foreign state at the time the policy was issued; that the policy had at all times been kept within that state and the premiums paid there; that the insured died there; that his will was admitted to probate and his executors appointed there; that the proofs of death might have been made there, if the policy had not been voluntarily paid; that the company, as a condition of doing business in that state, had designated a certain official thereof to receive service of process with the same effect as if served personally upon the company; and that, at the time of the death of the insured, there was sufficient property of the company within that state to satisfy the policy, so that it would not have been necessary for decedent's

executors to come to this state to protect and collect his claim under the policy, if it had not been paid; such circumstances are sufficient to fix the situs of the contract of insurance and the claims arising thereunder in the state of decedent's residence and not within this state.

*Matter of Gordon,* 114 App. Div. 202, affirmed.

(Argued November 13, 1906; decided December 21, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 9, 1906, which reversed an order of the New York County Surrogate's Court assessing a transfer tax upon the estate of Leonard J. Gordon, deceased.

The facts, so far as material, are stated in the opinion.

*Jabish Holmes, Jr.,* and *Alfred Yankauer* for appellant. The debt, payable in money by the Equitable Life Assurance Society, a resident debtor, to the non-resident decedent, is taxable under the Transfer Tax Law, as the state's jurisdiction over the debtor gives jurisdiction for the purposes of taxation. (*St. John* v. *American,* 13 N. Y. 38; *Olmsted* v. *Keyes,* 83 N. Y. 593; *Blackstone* v. *Miller,* 188 U. S. 189; *Matter of Clinch,* 180 N. Y. 300; *Matter of Hewitt,* 181 N. Y. 547; *Matter of Daly,* 182 N. Y. 524; 100 App. Div. 374; *Matter of Phipps,* 77 Hun, 225; *Kratzenstein* v. *Lehman,* 19 App. Div. 225; *Amberg* v. *M. L. Ins. Co.,* 171 N. Y. 314.) The residence of the Equitable Life Assurance Company in the state of New York gives that state jurisdiction for the purpose of taxation, and makes the debt or liability evidenced by the policy due to a non-resident, property within the state of New York, and this rule is not affected by the fact that the corporation might be sued in New Jersey. (*Blackstone* v. *Miller,* 188 U. S. 207; *Graves* v. *Shaw,* 173 Mass. 205; *Plympton* v. *Bigelow,* 93 N. Y. 593; *Douglas* v. *P. Ins. Co.,* 138 N. Y. 209; *Woodward* v. *M. R. F. L. Assn.,* 178 N. Y. 485.)

*Daniel Burke* for respondents. The insurance policy is not taxable. It is not necessary to resort to the courts of New York to enforce payment. New Jersey has jurisdiction

of the person of the Equitable Life Assurance Society, and, therefore, the chose in action represented by the policy is property in New Jersey. (*Blackstone* v. *Miller*, 188 U. S. 189; *Matter of Horn*, 39 Misc. Rep. 133; *Tax on Foreign Held Bonds*, 15 Wall. 300.)

HISCOCK, J. The question presented is whether a claim under a certain policy of life insurance issued by a New York corporation to and upon the life of a resident of New Jersey is property subject to a transfer tax in this state within subdivision 2 of section 220 of the Transfer Tax Law of 1896, which imposes a tax " when the transfer is by will or intestate law of property within the state and the decedent was a nonresident of the state at the time of his death."

The learned Appellate Division reversed the decision of the surrogate and held that it was not property so taxable, and we concur in this view.

It appears that the Equitable Life Assurance Society, a corporation organized under the laws of the state of New York, and having its principal office in that state, issued a policy of insurance to and upon the life of one Gordon who then was and continued to be a resident of New Jersey. We assume that in accordance with the usual custom this policy was issued from the New York office, but in response to and acceptance of an application made by the assured in New Jersey. It was payable to the insured, his executors, administrators or assigns, at the office of the society in New York, and was at all times kept in the state of New Jersey where the premiums upon it are stated, without contradiction, to have been paid and where proofs of death might be presented to the company. Upon the death of Gordon his will was there admitted to probate, whereby he appointed his acting executor, also a resident of that state, and provided for the distribution of his property, including the proceeds of said policy. Prior to decedent's death the state of New Jersey had enacted legislation which compelled said insurance company, as a condition of doing business there, to submit to the

jurisdiction of its laws and courts through the service of process upon a designated New Jersey official with the same effect as if made personally upon the company, and at said date there was sufficient property of the debtor in the state to satisfy the claim upon the policy.

It would seem as though all of these circumstances were amply sufficient to fix the situs of this contract of insurance and of the claims arising thereunder in New Jersey and that fairly and reasonably they should be regarded as property within that state, rather than within the state of New York so as to be taxable in the latter place under the statute already referred to. (*State Tax on Foreign Held Bonds*, 15 Wall. 300; *New Orleans* v. *Stemple*, 175 U. S. 309, and cases cited therein.)

It is, however, urged that principles which might otherwise be regarded as fixing the situs of this debt at the place of domicile of the owner and holder constitute more or less of an historical fiction which at times must yield to more practical and important considerations; that where a creditor must go to the domicile of his debtor and rely upon the laws and tribunals of that jurisdiction for enforcement of his claim, the latter should be regarded as having its situs there; that the claim here involved comes within this rule and must be regarded as property taxable in New York because there the debtor insurance company was organized and has its principal place of business and thither must go the policyholder for collection of his claim. And in support of this contention the learned counsel cites the cases of *Blackstone* v. *Miller* (188 U. S. 189); *Matter of Houdayer* (150 N. Y. 37) and *Matter of Clinch* (180 N. Y. 300), which it is claimed have applied the principles invoked and upheld taxation in New York upon facts not to be differentiated from those presented here. We cannot, however, agree with him that these otherwise controlling decisions are predicated upon facts which fully square with those arising in this proceeding, for the creditor in each one of them unlike the respondents here was really under the necessity of going to the domicile of his

debtor in New York for protection and collection of his claim.
Thus the essential fact was present which alone permitted the
application of the principles referred to, and whatever was
there said apparently supporting appellant's position must be
interpreted in the light of that circumstance.

The *Blackstone* case involved the question of the right of
the state of New York to impose a tax upon the transfer of an
ordinary indebtedness due from a citizen of that state to a
non-resident, and also of a deposit made by such non-resident
in the state.  There is no discussion of the right with refer-
ence to the ordinary indebtedness, but the entire opinion is
devoted to a consideration of the power to impose a tax with
respect to the deposit.  This court had fully affirmed the right
to impose a tax upon the transfer of a deposit made within
the state upon the ground that it was the equivalent of actual
money and, therefore, clearly property within the state.
It had affirmed in that particular proceeding the imposition of
a tax upon that ground and this was all that it was necessary
to consider.  The Supreme Court of the United States in the
opinion delivered by Judge HOLMES, however, deemed it wise
to go beyond this ground and hold that a tax could be sus-
tained even upon the theory that the deposit was an ordinary
debt.  But this holding was unequivocally based upon the
conditions disclosed in that case, which were that the debtor
resided within the state and that the creditor must come there
and take advantage of the laws of the state for the purpose of
enforcing his claim.  Judge HOLMES said : "But it is plain
that the transfer (of the deposit) does depend upon the law of
New York, not because of any theoretical speculation con-
cerning the whereabouts of the debt, but because of the prac-
tical fact of its power over the person of the debtor.  *  *  *
What gives the debt validity ?  Nothing but the fact that the
law of the place where the debtor is will make him pay.  It
does not matter that the law would not need to be invoked in
the particular case.  Most of us do not commit crimes, yet we
nevertheless are subject to the criminal law, and it affords one
of the motives for our conduct.  So again, what enables any

other than the very creditor in proper person to collect the debt? The law of the same place. To test it, suppose that New York should turn back the current of legislation and extend to debts the rule still applied to slander that *actio personalis moritur cum persona*, and should provide that all debts hereafter contracted in New York and payable there should be extinguished by the death of either party. Leaving constitutional considerations to one side, it is plain that the right of the foreign creditor would be gone.

"Power over the person of the debtor confers jurisdiction, we repeat. And this being so we perceive no better reason for denying the right of New York to impose a succession tax on debts owed by its citizens than upon tangible chattels found within the state at the time of the death. The maxim *mobilia sequentur personam* had no more truth in the one case than in the other. When logic and the policy of a state conflict with a fiction due to historical tradition, the fiction must give way."

In the *Houdayer* case, Judge VANN wrote in favor of the right to tax in the case of a deposit made in a New York bank by a non-resident somewhat along the same lines subsequently adopted by the Supreme Court of the United States in the *Blackstone* case, concluding that even if such deposit was to be regarded as constituting an ordinary indebtedness a tax could be imposed for the reason, amongst others, that it was property "within the state, because the owner must come here to get it. It is subject to taxation because it is under the control of our laws."

While we do not think that anything there said on the facts as presented conflicts with our present views, it is to be observed that three of the four judges who concurred with Judge VANN did so upon the ground that the claim was a deposit to be regarded the same as money within the state and for that reason taxable here. The majority of the judges, therefore, concurring for taxation, did so upon the principle there distinctly enunciated that a deposit was in the nature of money or tangible property within the state.

In *Matter of Clinch*, the property which furnished the occasion for question in regard to taxation consisted of an interest in an estate. The person who held this interest was a non-resident of the country and the estate was being administered through probate proceedings in the state of New York, where the executor resided. It was held, under such circumstances, that the interest of the non-resident was property within the state, but Judge HAIGHT, writing for the court, made it very clear that this decision was based upon the circumstances there presented, saying : " In *Matter of Blackstone* (171 N. Y. 682) we followed the decision in the *Houdayer* case, and again taxed the deposit of a non-resident in a New York trust company. That case was appealed to the Supreme Court of the United States and our decision affirmed. (*Blackstone* v. *Miller*, 188 U. S. 189.) The Supreme Court took the same broad ground held by Judge VANN in this court (in *Houdayer* case). It said that the doctrine that the situs of personal property was the domicile of the owner was merely a fiction which must yield to facts ; that it was the law of the place where the debtor resided which gave the debt validity and forced the debtor to pay, and that it was within the constitutional power of the state where the debtor resided to tax the obligation from him to a non-resident. * * * Under the doctrine of the *Blackstone* case the interest of Robert Clinch in his father's estate was subject to the inheritance tax imposed by the laws of this state."

In *Matter of Hewitt* (181 N. Y. 547) and in *Matter of Daly* (182 N. Y. 524), also called to our attention, the court affirmed, without opinion, the action of the court below in imposing a tax, and in each of these cases the right to impose such tax was clearly sustained upon principles applicable to a deposit in bank.

Therefore, in each of the cases above referred to, where something was said by the court which is regarded by appellant as sustaining his views, the significant fact was present, outside of any others, that the party having a claim could not compel its satisfaction except by coming to the state of New

York, where resided, in two cases, the debtor, and where, in the other case, was being administered the estate in which he had an interest, and such fact legitimately led to the conclusion that this state was in position to impose a tax.

That, however, as we have already seen, is not the case at bar, for here the courts of New Jersey had just as complete jurisdiction of the insurance company as did those of the state of New York, and if, as suggested by Judge HOLMES, the state of New York had seen fit to "turn back the current of legislation and to extend to debts the rule still applied to slander that *actio personalis moritur cum persona*, and should provide that all debts hereafter contracted in New York and payable there should be extinguished by the death of either party," the parties interested still would have been able to bring suit in New Jersey against their debtor and there with full jurisdiction as upon personal service obtain a judgment which could have been satisfied out of property found within that state, and to which judgment, if it became necessary to bring an ancillary suit upon it in the state of New York, our courts would have been compelled to give due recognition as establishing within broad limitations the rights of the parties and the obligations of the debtor.

It is, however, urged that provision for a suit upon the insurance policy in New Jersey is too accidental and unimportant a fact to influence the determination of this case and distinguish it from the *Blackstone* and *Houdayer* and *Clinch* cases. This argument does not secure our assent. The policy throughout the different states of compelling an insurance company seeking to do business in one of them, to submit to the jurisdiction of its courts by provision for a substituted service upon some person, has been widespread, deliberate and very exacting. It was intended to obviate the possibility that an individual procuring insurance at the place of his domicile should be compelled for enforcement of his contract to go to some distant forum and become subject to the embarrassments and burdens which might result therefrom. It was designed to give to the insured or his representatives or

assigns full opportunity to enforce the contract of insurance at the place where it was accepted, and to give to the state wherein he resided just as complete jurisdiction over the insurer as was possessed by the state wherein it was organized. We feel that we are entirely justified in the view that this class of legislation was distinctly intended to abrogate that very idea that the insured could only obtain redress by resorting to the laws of the state wherein the insurance company had its organization and principal place of business, which is made the basis of taxation in the decisions cited.

Our view that this case is distinguished by at least one controlling fact from the *Blackstone* and other cases which we have reviewed, and that respondents' claim, tested by the ordinary and essential attributes incident to ownership of such a chose in action, is to be regarded as property within the state of New Jersey rather than the state of New York, is confirmed by the quite pertinent authority of *New England Mutual Life Insurance Company* v. *Woodworth* (111 U. S. 138) and *Sulz* v. *Mutual Reserve Fund Life Association* (145 N. Y. 563).

In the first case the insurance company being a corporation organized under the laws of, and having its principal place of business in, the state of Massachusetts, issued a policy of insurance to one Ann E. Woodworth as assured, by which it agreed to pay five thousand dollars to her, her executors, administrators or assigns, after presentation of proof of loss, for the benefit of her husband if he should survive her. The proofs of death were to be furnished and the insurance was made payable at the Boston office. Mrs. Woodworth died in New York, but her husband after her death resided in Illinois, having in his possession there the policy. The laws of Illinois provided, as a condition of its doing business in that state, that process might be served upon the company by delivering a copy to a specified person as attorney. It did not appear that the company was required to or did keep assets in that state. It was held, under these circumstances, less strong in respect to the domicile of the assured

than those existing in this case in behalf of the respondents, that the claim upon the policy constituted personal property in the state of Illinois so as to furnish a basis for letters of administration in that jurisdiction. Mr. Justice BLATCHFORD, writing in behalf of the court, after reference to the law providing for a substituted service in Illinois upon the company, said: "In view of this legislation and the policy embodied in it, when this corporation, not organized under the laws of Illinois, has, by virtue of those laws, a place of business in Illinois and a general agent there, and a resident attorney there for the service of process, and can be compelled to pay its debts there by judicial process, and has issued a policy payable, on death, to an administrator, the corporation must be regarded as having a domicile there, in the sense of the rule that the debt on the policy is assets at its domicile, so as to uphold the grant of letters of administration there. * * * The general rule is that simple contract debts, such as a policy of insurance not under seal, are, for the purpose of founding administration, assets where the debtor resides, without regard to the place where the policy is found, as this court has recently affirmed in *Wyman* v. *Halstead* (109 U. S. 654). But the reason why the state which charters a corporation is its domicile in reference to debts which it owes, is because there only can it be sued or found for the service of process. This is now changed in cases like the present; and in the courts of the United States it is held that a corporation of one state doing business in another is suable in the courts of the United States established in the latter state, if the laws of that state so provide, and in the manner provided by those laws."

The learned judge also discussed somewhat and overruled objections akin to those urged by the appellant in this case, that proceedings could be instituted in the state where the company was organized and other jurisdictions, saying: "It is argued for the plaintiff in error that administration could have been taken out in Michigan on the policy, on the view that that was the domicile of the assured, and that it could

have been taken out in Massachusetts, without regard to the location of the policy at the time of the death of Mrs. Woodworth, and without regard to the fact that she died in another jurisdiction. * * * The reason assigned for taking out letters in Massachusetts has equal force when applied to a state where the debtor does business under the laws of that state, and can be sued as fully as in Massachusetts, and is sure to be found so as to be served with process. If the defendant is to be sued in Illinois, administration must be taken out there; and administration in Massachusetts or in Michigan would not suffice as a basis for a suit in Illinois. The consent and capacity to be sued in Illinois still require, if an administrator is to be the plaintiff, that letters should be issued in Illinois; and by the terms of the policy, on the death of the assured, the suit must be by her executor or administrator. So it results, that the question in this case must be decided on the same principles as if Illinois were the only state in which suit could be brought, and, therefore, the state in which letters of administration must be taken out for the purpose of a suit."

Bearing in mind that in this case an administrator has been appointed in the state of New Jersey, and, so far as appears, not in this state, and that such New Jersey administrator has actually collected the proceeds of the policy, the *Sulz* case is very pertinent. In that case the court, after referring to the decision in the *Woodworth* case just quoted from, says: "Within the above case in the federal court the person of the debtor in this case was within the State of Washington, and the debt could be collected there as well as here. It is a case, therefore, of a concurrent jurisdiction, so far as the general facts go, and in such case the situs of the policy, the death of the insured in Washington and the issuing of letters of administration in that state and the prior commencement of the Washington action are material facts. In this case we do not assert that the courts of this state might not have had jurisdiction to entertain this action, even though the policy were in the state of Washington, provided the courts of that

state had not appointed an administrator, and the adminis-trator thus appointed had not commenced an action on the policy prior to the action in this state.  *  *  *  But in the case of administrators duly appointed in each state, when the foreign administrator first duly commences an action by the service of process upon an agent of the company to recover on the policy, and the policy is found in the foreign state at the death of the assured in that state, we think the courts of the foreign state have obtained jurisdiction, and, therefore, could give full and complete discharge to the company if it paid upon a judgment obtained in such action, and we ought not to permit a second action in the courts of this state upon the same policy.  In such a case as this we think that the principle of comity between the states calls for the refusal on the part of the courts of this state to entertain jurisdiction."

This case, therefore, distinctly holds that while under such circumstances as are presented, our courts might entertain jurisdiction of a suit if there commenced first, they have not that sole and exclusive jurisdiction for enforcement of the contract which would compel the creditor to come to them and thus afford that basis for taxation which is relied upon by the appellant.

In conclusion we might say that we are unable to contem-plate with a confidence born of great optimism the results which would follow from the adoption and enforcement of the doctrine urged by appellant.  If the contract in this case is subject to the imposition of a transfer tax, then any contract of insurance issued to a non-resident, passing to and held by his non-resident representatives or assigns, and being adminis-tered and enforceable in a foreign jurisdiction, whether in the state of Texas or California, or in some foreign country, would afford the basis of taxation in this state, provided only the policy was issued by a New York corporation and access could be obtained by the tax collector to its proceeds.  No distance of domicile of the assured and his transferees or beneficiaries, and no completeness of foreign jurisdiction over administration and enforcement, and no lack of anticipation

of such a result upon the part of the assured, would be a bar to the attempted application of the taxing power. It requires no great imaginative processes to picture the limits and the disapproval and friction to which this theory would lead if logically carried to its full length.

It was undoubtedly the intent of the legislature that the statute under consideration should be liberally construed to the end of taxing the transfer of all property which fairly and reasonably could be regarded as subject to the same, and this court has unequivocally placed itself upon record in favor of construing the statute in the light of such intent. But the proposition now propounded, if adopted, would lead far beyond any point which has thus far been reached, and we do not believe that it would be wise or practicable to adopt it. We can scarcely believe that the various states and countries which have so carefully and positively protected their citizens holding policies of insurance issued by foreign corporations from the burden and annoyance of being compelled to go to distant forums for the purpose of enforcing their contracts, would permit them to be subjected to a species of taxation based upon an assumed necessity for resort to foreign courts which has thus been obviated. We believe that if the policy being urged upon us were adopted, the great business of insurance now being conducted by corporations chartered and under the protection of the state of New York, would be subjected to new and unexpected embarrassment.

For these reasons the order appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and WILLARD BARTLETT, JJ., concur.

Order affirmed.