IN RE VOLNEY S. FULHAM'S ESTATE.

October Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 4, 1923.

*Taxation—A College Is A "Person" for Purposes of Transfer Tax—Construction of Taxing Statutes—Purpose of G. L. 1093—"Thus" and "Thus Acquires" as Used in Such Section—Conditions Requisite to Escape from Transfer Tax—Evidence—Judicial Notice—G. L. 1093 Construed—Construction of Statutes—Property—Legal and Equitable "Owner"—Effect of Transfer of Property in Trust Subject to Recall—Where Tax Is on Transfer of Property Its Location Is Unimportant—Time of Valuation of Property for Purposes of Transfer Tax—When Tax Payable—Interest.*

1.  The tax authorized by G. L. 1093, is not a tax on the property itself, but upon the right of succession to the property.
2.  A college comes within the term "person" as used in G. L. 1093, which provides that every person acquiring property in the manner therein specified shall pay a prescribed tax.
3.  While it is generally held that taxing statutes, including those providing for inheritance taxes, are to be strictly construed against the taxing power, the real meaning and purpose of the lawgiver is the thing to be sought after, and, if disclosed by fair and reasonable construction, it is to be given effect.
4.  The purpose of the enactment of G. L. 1093 was to make it impossible to escape inheritance taxes by transfers merely colorable or fictitious, the policy of such statutes being that the

owner of property shall not evade the tax, except by full and
effective transfers made during his lifetime; and such a
statute should be carefully considered and liberally construed
in favor of the taxing power, lest its purpose be easily circum-
vented by designing persons.

5. A construction of a statute that facilitates its evasion should be
avoided.

6. The word "thus," as used in G. L. 1093 in the phrase "every person
who thus acquires title to personal estate," relates to the
manner of acquisition specified in such section with reference
to real estate, and means not only that the personal property
must be acquired by deed, grant or gift, but also that the
transfer was "made and intended to take effect in possession
or enjoyment upon or after the death of the grantor or donor,"
and except as acquired in this way personal property is not
"thus" acquired within the meaning of G. L. 1093, the true
meaning of which, so far as acquisition of personal property
is concerned, being just as expressed in No. 30, Acts of 1904,
and P. S. 823, under which real and personal estate stand alike.

7. In order that a transfer of property may escape the tax provided
in G. L. 1093, unless within the exception therein mentioned,
the owner must relinquish all power of control over the prop-
erty and confer upon another the right to dispose of it and
receive and use its avails, without subsequent restriction or
control by the donor, for the property, together with all the
attributes of ownership, must pass from the donor, to take
effect independently of his death.

8. A court will take judicial notice of the report of a commissioner
of taxes to the Legislature, where such report is made and
published by authority of law.

9. A court will take judicial notice of the contents of the journals of
the General Assembly.

10. The words "and then owned such property" contained in that
portion of G. L. 1093 which provides that "every such person
who thus acquires title to personal estate or any interest
therein from a deceased person who at the date of his death
was an inhabitant of this State and then owned such property"
shall pay the State a certain transfer tax, in the light of the
legislative history of the section, held to mean no more and
no less than if the Legislature had said, "who thus acquires

title to personal estate * * * * from an owner who, at his decease, was an inhabitant of this State."

11. In construing a statute, the true meaning of the Legislature is to be ascertained, not from the literal sense of the words used, but from a consideration of the whole and every part of the statute, the subject-matter, the effects and consequences, and the reason and spirit of the law.

12. Where, in construing a statute, to give a word its usual meaning would, in a large measure, destroy the act and defeat the purpose of its passage, such a result should, if possible, be avoided by a reasonable construction.

13. There may be two "owners" in respect of the same property: One, the nominal or legal owner; the other, the beneficial or equitable owner; and the "owner" referred to in G. L. 1093 is the equitable or beneficial owner and not the person who holds the legal title.

14. Where certain property was transferred to a college during the donor's life, in trust for certain specified purposes, but subject to a right on his part to have any part of the fund paid back to him on demand, this right of revocation made him to all intents and purposes the real owner of the property, and, upon death of the donor, made it subject to the transfer tax provided in G. L. 1093.

15. In determining the taxability of such a transfer, the fact that such property had passed out of the State and was in the possession of the donee in another state at the time of the donor's decease is unimportant, because the tax is not on the property but upon the transfer.

16. Where property was transferred to a college by gift in trust during the lifetime of a donor, by a written instrument, but under such circumstances that G. L. 1093 made it subject to the transfer tax provided by G. L. 1090, its valuation as a basis for such tax should be made as of the date of the donor's death, and under G. L. 1134 such tax is payable within three months after the donor's death, and draws interest thereafter under G. L. 1137.

APPEAL from a decree of the probate court for the district of Windsor disallowing the claim presented for a State inheritance tax on the settlement of the estate of Volney S. Fulham.

The case having been submitted to the county court on an agreed statement of facts, such court in vacation after the December Term, 1921, Windsor County, *Wilson*, J., presiding, without hearing, and *pro forma,* affirmed the judgment of the probate court and ordered the cause certified back. From this judgment, the commissioner of taxes, on behalf of the State, appealed. The opinion states the case. *Judgment reversed, with directions for judgment for claimant.*

*Frank C. Archibald,* Attorney-General, and *Fred B. Thomas,* for the appellant.

*Charles H. Darling* for the estate.

Powers, J. The probate court for the district of Windsor disallowed the claim of the State for a transfer tax on certain property formerly owned by Volney S. Fulham, late of Ludlow. The commissioner of taxes, in behalf of the State, appealed to the county court, wherein a trial by court was had on an agreed statement of facts, and judgment was rendered for the defendant estate. The State alleges error. Briefly stated, the essential facts are as follows: At different times, Fulham, being the owner of certain railroad stocks, indorsed the seven certificates representing the same and delivered them to the Trustees of Tufts College, a Massachusetts corporation, in trust. He made deposits in certain savings institutions in this State, taking the pass books in the name of the ''Trustees of Tufts College, trustee of the estate of Volney Sewall Fulham,'' and delivering them to the college. On October 2, 1915, he made a will giving the residue of his estate to the Trustees of Tufts College, in trust for educational purposes.

On September 27, 1917, he executed a writing wherein he recited the fact that he had made a will by which he had bequeathed to the college the residue of his estate, including, as the writing states, ''stock in the New York Central and Hudson River Railroad Company and stock in the New York Central Railroad Company that I had before assigned and delivered to said Trustee, in trust, all to be transferred to said Trustee on the books of said corporation after my death, so that I might receive the dividends thereon during my life * * * and said

Trustee accepted said trust in writing * * *." This writing also recited the fact that he had made the deposits above referred to as a part of said trust fund, and that he then intended in his lifetime to create and establish the trust "projected in said will, independently of the provisions thereof," except as thereinafter provided. The writing then continues: "Now, therefore, in order to put said Trustee in possession of nearly all my property while I live, I hereby release to said Trustee my right to further dividends from said stocks; and I direct said Trustee to procure the transfer of said stocks to said Trustee on the books of said companies. And in consideration of the assumption by said Trustee of the trust hereby created, I hereby give, grant, convey and confirm to said Trustees of Tufts College, Trustee, in trust, all the stocks described in the seven certificates issued to me in said Railroad Companies, now in the possession of said Trustee; the aforesaid two books of deposit in savings institutions, with moneys deposited and that may be deposited therein by me to the credit of said Trustee, and all the assets remaining in the hands of the executor of my will or that may remain after the settlement of my estate. Said Trustees of Tufts College, Trustee, to have and to hold said stocks, the sums deposited by me in institution of savings to the credit of said Trustee with the accumulated interest thereon, and what may come to said Trustee from my estate on its settlement, in trust for the uses and purposes specified in said will, except, if the funds retained by me for personal expenses, at any time, in my judgment, shall be insufficient therefor, or if for any reason I may desire it, said Trustee shall pay back to me, on demand, any part of said trust fund." Then follows a further provision not here important. The college through its president accepted the trust and agreed to administer it according to the will.

The stocks and deposits constituted practically all of the property owned by Fulham. The certificates and pass books have remained in the possession of the college from the time of their deliveries, but the former have never been transferred on the books of the corporations. The college has never collected the dividends on the stocks, but these were paid to Fulham as long as he lived, and then to his executor. The interest on the deposits has been allowed to accumulate, and none of it has been withdrawn.

. [1]   From the foregoing, it is apparent that whatever the understanding may have been between Fulham and the college when this propery was delivered to the latter, there ultimate relations to this property and to each other in respect thereof were such as was evidenced by this writing of September 27.   All right; title or interest which Fulham theretofore had in or to that property was released and cut off by that writing; not absolutely, however, but provisionally.   If, in his own judgment, he had left enough for his personal expenses, the gift stood.   If not, he could recall any part of the fund.   Not only this, but if for any reason he desired it, the college was bound to restore any part of the fund, on his demand.   In these circumstances is this property subject to a transfer tax under the statute?   In stating the question in this form, and in referring to the taxability of this property elsewhere herein, we do not overlook the fact that such a tax as is here claimed by the State is not a tax on the property, itself, but upon the right of succession to the property.   *In re Joslyn's Estate,* 76 Vt. 88, 56 Atl. 281; *In re Hickok's Estate,* 78 Vt. 259, 62 Atl. 724, 6 Ann. Cas. 578; *In re Howard's Estate,* 80 Vt. 489, 68 Atl. 513.

G. L. 1093 reads as follows: ''Every person in a class liable to a tax under the second and third preceding sections, who acquires title to real estate within this State or any interest therein by deed, grant or gift, except in case of a *bona fide* purchase for a full consideration in money or money's worth, made or intended to take effect in possession or enjoyment upon or after the death of the· grantor or donor, and every such person who thus acquires title to personal estate or any interest therein from a deceased person who at the date of his death was an inhabitant of this State and then owned such property, shall pay to the State the same tax that he would have been required to pay had such estate or interest passed to him from such deceased person by will, the laws of descent or decree of a court in this State. Such tax shall be a first lien on the real or personal estate thus conveyed, until paid in full.''

[2]   The college is such a person as is referred to; the transaction was not such a purchase as is described; and Fulham was, at the time of his death, an inhabitant of this State.   Thus far, there is no controversy.

[3-5]    It is quite generally held that taxing statutes are to be strictly construed against the taxing power; and this rule is applied to statutes providing for inheritance taxes.   But the real meaning and purpose of the lawgiver is the thing to be sought after, and if fair and reasonable construction discloses it, it is to be given effect.   Then, too, we must remember that the section under consideration is not the one that provides for taxing inheritances, direct or collateral, but the one intended to prevent the evasion of such taxes.   The very purpose of its enactment was to make it impossible to escape such taxes by transfers merely colorable or fictitious.   The policy of such statutes—now in force in many of the states—is that the owner of property shall not evade the tax, except by full and effective transfers made during his lifetime.   *State Street Trust Co.* v. *Stevens*, 209 Mass. 373, 95 N. E. 851.   Surely, such a statute should be carefully considered and liberally construed in favor of the taxing power (*In re Gordon*, 186 N. Y. 471, 79 N. E. 722, 10 L. R. A. [N. S.] 1089), lest its purpose be easily circumvented by designing persons.   For, a construction that would facilitate evasion should be avoided.   Endl. Sts. §§ 138, 152.

The legislative history of the statute before us is both interesting and instructive.   G. L. 1093 originated in section 2, No. 30, Acts of 1904, which, so far as need be quoted, reads as follows: "Every person * * * who shall acquire title to real estate or any interst therein by voluntary conveyance or deed of gift made or intended to take effect in possession or enjoyment upon or after the death of the grantor or who shall by voluntary conveyance or by gift acquire title to personal estate or any interest therein made or intended to take effect and (in) possession or enjoyment upon or after the death of the grantor or donor," etc. This became P. S. 823, where it reads, "Every person * * * who acquires title to real or personal estate or any interest therein by voluntary conveyance or gift made or intended to take effect in possession or enjoyment upon or after the death of the grantor or donor." etc.   So far, then, the statute treated real and personal estate transfers alike, and made their taxability depend on when they were to take effect in possession and enjoyment.   Then came No. 60, Acts of 1912, section 2 of which amended P. S. 823 so as to read (in the respect here important) just as G. L. 1093 does.

[6]   To give effect to this statute according to the purpose of the Legislature we must guard against giving too little force and scope to the word "thus" as used in the phrase "every person who thus acquires title to personal estate." Obviously, this word relates to the manner of acquisition specified in the section with reference to real estate. It means not only that the personal property must be acquired by deed, grant or gift, but also that the transfer was "made and intended to take effect in possession or enjoyment upon or after the death of the grantor or donor." Except as acquired in this way, personal property is not "thus" acquired within the meaning of the statute. We hold, therefore, that the true meaning of G. L. 1093 so far as the acquisition of personal property is concerned, is just what was so clearly expressed in No. 30, Acts of 1904, and P. S. 823; and that in this respect, real and personal estate stand alike thereunder.

[7]   The effect of this construction upon the standing of the arrangement of September 27 between Fulham and the college is not difficult to discover. While the latter held, thereunder, the legal title to the property prior to the former's decease, it did not have and was not entitled to its "enjoyment" until that event. As long as he lived, Fulham retained a very real and complete control over the trust fund. He could, at pleasure, recall any part of it, which means, of course, all of it. It is only when the owner relinquishes all power of control over the property and confers upon another the right to dispose of it and receive and use its avails, without subsequent restriction or control by the donor, that the transfer escapes the tax. The property, together with all the attributes of ownership, must pass from the donor, to take effect independently of his death. *State Street Trust Co.* v. *Stevens*, 209 Mass. 373, 95 N. E. 851; *In re Brandreth's Estate*, 169 N. Y. 437, 62 N. E. 563, 58 L. R. A. 148; *In re Todd's Estate*, 237 Pa. 466, 85 Atl. 845, 43 L. R. A. (N. S.) 869; *People* v. *Moir*, 207 Ill. 180, 69 N. E. 905, 99 A. S. R. 205; *Carter* v. *Bugbee*, 91 N. J. Law, 438, 103 Atl. 818; *Nickel* v. *State*, 43 Nev. 12, 177 Pac. 409, 185 Pac. 565.

It remains to consider the meaning and effect of the words "and then owned such property" introduced into the statute by No. 60, Acts of 1912, already referred to.

[8-10]　In passing this act, the Legislature had a definite purpose in view. The commissioner of taxes, in his biennial report to that body,—of which we take notice, since it is made and published by authority of law, *Jeffersonville* v. *Louisville & Jeffersonville Bridge Co.*, 169 Ind. 645, 83 N. E. 337,— had called attention to a resolution then lately adopted by the New England Tax Conference, recommending that the several states so frame their laws that mortuary transfers of personal property, whatever its location might be, should be taxed by that state only, wherein the decedent had his domicile; and that similar transfers of real estate, be taxed only by the state wherein it was located. And the commissioner had advised that an act be passed by the Legislature to carry into effect these recommendations of the conference. Accordingly, as we learn from the journals of the General Assembly,—of which we also take notice, 23 C. J. 102,—H. 578 was introduced into the House of Representatives from the Committee on Ways and Means, for the very purpose, we may assume, of so changing our plan of taxation that it would conform to that sponsored by the conference. In due course of legislative procedure, this bill became No. 60, Acts of 1912.

To accomplish the change desired, it was first necessary to separate the two classes of property. So section 1 of Act No. 60 amended P. S. 822 to accomplish this separation. And inasmuch as the latter only dealt with inheritances, the words "and then owned such personal property" were appropriately used in the amendatory act. It then became necessary to amend P. S. 823, so as to make it harmonize with 822 as amended. Section 2 of Act No. 60 was intended to accomplish this. Having made use of the above quoted words in section 1, it is quite probable that they were inadvertently carried into section 2 of that Act, without appreciation of their effect. At any rate, when we consider the purpose of the act and the effect of giving these words their usual meaning, it is apparent that the true meaning of the whole provision is no more and no less than it would have been if the Legislature had said, "who thus acquires title to personal estate * * * from an owner who, at his decease, was an inhabitant of this state."

[11]　There is another interpretation of this statute that is equally fatal to the claim of the estate. It is a familiar and well settled rule of construction, that the true meaning of the Legis-

lature is to be ascertained, not from the literal sense of the words used, but from a consideration of the whole and every part of the statute, the subject-matter, the effects and consequences, and the reason and spirit of the law. *Ryegate* v. *Wardsboro*, 30 Vt. 746; *Baker* v. *Jacobs*, 64 Vt. 197, 23 Atl. 588; *Osgood* v. *Central Vermont Ry. Co.*, 77 Vt. 334, 60 Atl. 137, 70 L. R. A. 930.

[12]   Applying this rule, it is simply unbelievable that the word "owned" was here intended in its usual and full proprietary sense. To give it that meaning would, in a large measure, destroy the act and defeat the very purpose of its passage. For, if the recipient "acquired" the personal property or an interest therein, the donor ceased to own, in the full sense of the term, that property or interest. Evasion of the tax would be absurdly simple. For all the owner would have to do would to be to transfer the legal title. He could retain a firm hold on the property by way of control, benefit, and revocation; and yet it would, at his decease, pass to the recipient tax-free. Such an absurd result should be avoided (*Morse* v. *Tracey*, 91 Vt. 476, 100 Atl. 923), if possible by reasonable construction.

[13, 14]   The law recognizes that there may be two "owners" in respect of the same property: One, the nominal owner; the other, the beneficial owner. The former is the legal owner; the latter, the equitable owner. 2 Repal. & Law 916. Thus, a trustee and the *cestui qui trust* are both owners. *Schott* v. *Harvey*, 105 Pa. 222, 51 A. R. 201. We applied this doctrine in *St. Albans* v. *Avery*, 95 Vt. 249, 114 Atl. 31, where we held that the Old Colony Trust Company was the legal owner of the property there in question, and the settlors of the trust, the beneficial owners of it. So, too, in *Payne* v. *Sheets*, 75 Vt. 335, 55 Atl. 656, in construing V. S. 4626 (G. L. 6443), we recognized the fact that the word "owner" is used in different senses, saying that it did not always import an absolute owner, and that "its meaning is often varied according to the connection in which it is used, and is to be understood according to the subject-matter to which it relates." The very same thing was held in *McFeters* v. *Pierson*, 15 Col. 201, 24 Pac. 1076, 22 A. S. R. 388.

The very most that reasonably could be claimed is that the owner referred to in this statute is the equitable owner,—the beneficial owner,—and not the person who holds the legal title. Fulham parted with the title, but as long as he lived he was the

potential owner,—the substantial owner,—and to all intents and purposes, the real owner. *In re Lines' Estate,* 155 Pa. 378, 26 Atl. 728; *St. Albans* v. *Avery,* 95 Vt. 249, 114 Atl. 31. This follows from his complete power of revocation—the absolute power to recall all he had parted with. Not that he *did,* but that he *could.*

[15]   We are not here concerned with the validity of this gift as between the donor and the donee. We are only called upon to pass upon the taxability of the transfer, assuming its validity. Nor are we at all embarrassed by the fact that this property had passed out of the State and was in the possession of the college in the State of Massachusetts at the time of Fulham's decease. As we have seen, the tax is not on the property, but its transfer. So its actual location is not important. *In re Keeney's Estate,* 222 U. S. 525, 32 Sup. Ct. 105, 56 L. ed. 299, 38 L. R. A. (N. S.) 1139, affirming the decision of the Court of Appeals of New York as shown in 194 N. Y. 281, 87 N. E. 428. Then, too, as we have seen, it was the intention of the conference that Vermont, and not Massachusetts, should tax the transfer of property so situated.

[16]   The property having passed to the college by the transfer referred to and not by the will, its valuation as a basis of the transfer tax should be made as of November 12, 1917, the date of Fulham's death. G. L. 1109. The amount thus ascertained is agreed to be $20,031.50. The tax is 5% of this sum (G. L. 1090), and was payable within three months after Fulham's death (G. L. 1134), and draws interest thereafter (G. L. 1137)..

*Judgment reversed and judgment that the claimant recover from the estate the sum of $1,001.57, with simple interest thereon from February 12, 1918. Let the result be certified to the probate court.*