In the Matter of the Transfer Tax upon the Estate of GERTRUDE WESTBROOK, Deceased.

STATE TAX COMMISSION, Appellant; IRVING TRUST COMPANY, as Executor, etc., of GERTRUDE WESTBROOK, Deceased, Respondent.

First Department, March 10, 1930.

*Seth T. Cole,* for the appellant.

*Herbert C. Pentz* of counsel [*Compton & Delaney,* attorneys], for the respondent.

O'MALLEY, J. On June 2, 1918, the decedent was a passenger on board the steamship *Carolina* which was sunk by a German submarine. As a result the decedent lost certain personal property and sustained certain personal injuries. On the date in question a state of war existed between the United States and Germany.

On August 25, 1921, the treaty of Berlin was entered into between Germany and the United States, whereby there was reserved to the United States and its nationals any and all rights, privileges, indemnities, reparations or advantages, together with the right to enforce the same, to which it or they became entitled, under the armistice theretofore concluded between Germany and the Allied and Associated Powers, or under the treaty of Versailles. (42 U. S. Stat. at Large, 1939.)

On August 10, 1922, a further agreement between Germany

and the United States was entered into pursuant to which there was established a Mixed Claims Commission to determine the amount to be paid by Germany under the treaty of Berlin on account of damages to the civil population of the United States and their property. (42 U. S. Stat. at Large, 2200.)

On January 29, 1925, this Commission made two awards to the decedent, one of $7,000, with interest, for loss of personal property; the other for $5,000, with interest, for personal injuries. Thereafter this sum was paid by the government of Germany to the government of the United States on behalf of the decedent. Before receipt of any part of this allowance, however, and on December 28, 1927, the decedent died leaving a last will and testament admitted to probate and dated March 5, 1927.

On March 10, 1928, the Settlement of War Claims Act of 1928 (45 U. S. Stat. at Large, 254, chap. 167) was passed, pursuant to which payment of the award to the decedent was made to her executor herein. The amount of this award is the sum which has been held not taxable under article 10 of the Tax Law. Evidently in deference to an earlier decision of his associate (*Matter of Loney*, 133 Misc. 249), the learned surrogate has held that such award constituted no part of the taxable assets of the estate herein. With this conclusion we disagree.

It should be remembered at the outset that the tax levied is not a tax on property, but one on succession (*Matter of Gihon*, 169 N. Y. 443, 447), and that the statute should be liberally construed to the end of taxing the transfer of all property which fairly and reasonably may be regarded as subject thereto. (*Matter of Gordon*, 186 N. Y. 471, 473.) It is also noteworthy that, though payment of the award was not made until after the death of the decedent, the award was actually made before her death, and that her will, duly probated and probably drawn in the light of the claim, disposed not only of all property of which she should die seized or possessed, but also all property to which she was entitled " at the time of * * * death or *thereafter.*"

It is true that the claim which ripened into an award and payment as above detailed is not founded upon any law, common or statutory, of this State. It is based upon the law of nations — international law. Nevertheless, we are of opinion that, under the circumstances here disclosed, the claim, particularly as it had ripened into an award and subsequent payment, constituted property which was taxable.

A lengthy dissertation on international law in this respect would serve no useful purpose. The situation is aptly summed up in

Thorpe on International Claims, 1924. As there stated, while the parties to a litigation in an arbitrable tribunal, such as the Mixed Claims Commission, are the sovereign parties to the treaty, such sovereign parties conduct the litigation on behalf of their respective citizens and the real owners of the claims, and the real parties in interest are the respective citizens (pp. 59, 60). As stated in a decision of the Mixed Claims Commission itself (Mixed Claims Commission, U. S. and Germany, Ad. Dec. II), both governments were interested in and the Commission necessarily determined " the ownership of each claim at and since its inception " (p. 69).

The Mixed Claims Commission had jurisdiction to determine " in whom a cause of action originally vests." It left all questions involving the transfer of such interest from the original owner to be decided by municipal tribunals according to local jurisprudence (p. 72).

The excellent discussion in Thorpe (pp. 58 *et seq.* and 112 *et seq.*) clearly demonstrates, we believe, that before her death the decedent had a claim justiciable and arbitrable and a well-recognized right. This claim was based not only upon the common principles of international law, but upon the contractual obligations of Germany with the government of the United States under the terms of the treaty of Berlin and the agreement for the Mixed Claims Commission of August 10, 1922. It was property, therefore, which the decedent owned at her death. It passed by her will and was properly subject to tax. That such claims constitute a right and are in the nature of property was early recognized by the decision of the Supreme Court of the United States in *Comegys* v. *Vasse* (1 Pet. 193), which has been followed in this State in *Taft* v. *Marsily* (120 N. Y. 474). (See, also, *Williams* v. *Heard*, 140 U. S. 529.)

It follows, therefore, that the order should be reversed, with costs, and the matter remitted to the surrogate for action in conformity with the views herein expressed.

DOWLING, P. J., MARTIN and PROSKAUER, JJ., concur; MERRELL, J., dissents and votes for affirmance.

Order reversed, with costs to the appellant, and proceeding remitted to the Surrogate's Court in accordance with opinion.