ALBAN J. PARKER, ATTORNEY GENERAL *v.* DAVID V. ANDERSON, AUDITOR OF ACCOUNTS.

February Term, 1942.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed March 18, 1942.

372

*Alban J. Parker,* Attorney General, *pro se.*

*George L. Hunt* for petitionee.

STURTEVANT, J.   This is a petition brought by the attorney general of this State, acting in his official capacity, asking that a writ of mandamus issue to compel David V. Anderson as auditor of accounts of the State of Vermont forthwith to allow the claims of Bernard E. Parker, Mark G. Page and others mentioned in the petition and to issue his warrants for the payment of same.

While several claims are mentioned in the petition, all can be disposed of by a consideration of those of Parker and Page, there being five which may be classed as the Parker type and twenty of the Page type.

All of these claims are based upon the provisions of act No. 179 of the acts of the regular session of the 1941 Legislature, hereinafter referred to as No. 179, and on joint resolution No. 19 of the acts and resolves of the special session of the 1941 Legislature, hereinafter referred to as J. R. 19. This act and resolution are as follows:

### No. 179.

"It is hereby enacted by the General Assembly of the State of Vermont:

Section 1. Section 8057 of the Public Laws is hereby amended so as to read as follows:

Sec. 8057. *State pay.* In the event that the military or naval forces of the United States become actively involved prior to June 1, 1945, in armed conflict with such forces of another nation, each enlisted man and woman in the military or naval forces of the United States who resided in this state at the time of his or her enlistment or induction into the service of the United States shall be entitled to receive from the state, in addition to the pay received from the federal government, the sum of ten dollars for each month not exceeding a total of twelve served in such forces during the period of such involvement, to be paid upon honorable discharge from such service, or upon death in such service; and in case of the death of such enlisted man or woman after such discharge and prior to the receipt of such sum, the same shall be paid to his or her spouse, or to the next of kin if there is no spouse living. The spouse of any such enlisted man or woman dying while in such service, during the period of such involvement, or the next of kin if there is no spouse living, shall be entitled to receive from the state the sum of one hundred twenty dollars, to be paid upon his or her death.

Sec. 2. This act shall take effect from its passage.

Approved April 7, 1941."

## J. R. 19.

"Resolved by the Senate and House of Representatives:

That the term 'armed conflict' as used in No. 179 of the Acts of 1941 shall be construed liberally and shall include a state of national emergency wherein the President of the United States shall, as commander-in-chief of the army and navy, order such branches of government to exercise force to protect the lives and property which are or may be endangered by the hostile acts of any foreign power; also a declaration of war by an act of Congress, and be it further

Resolved, that the term 'resided' as used in 179 of the Acts of 1941 shall be construed to mean and include those persons who, at the time of his or her enlistment or induction in the service of the United States, had been bona fide residents of this state for a period of not less than one year before such enlistment or induction."

The petition shows that Parker was inducted into the United States army February 24, 1941, had resided in this State for more than one year prior thereto, and that he served as an enlisted man in the military forces of the United States from the date of his induction to and including November 17, 1941, on which last named date he was honorably discharged from such service.

Insofar as here material the facts pertaining to the Page claim as to his military service are similar to those above stated as to the Parker claim except that on October 27, 1941, instead of receiving an "honorable discharge" he was separated from the military forces of the United States by authority of special order No. 197 of the forty-third division of the United States army whereby he was released from active military service in the army and transferred to control of the State of Vermont.

The relator contends that both Parker and Page having presented their claims to the auditor of accounts for State pay in accordance with the provisions of No. 179 and J. R. 19, it became the duty of the auditor to allow same and to issue his warrants for the payment of them.

The respondent contends that J. R. 19, being a mere resolution is entirely without force and effect as applied to the facts here. He also insists that it does not appear that either the naval or military forces of the United States were "actively involved * * * in armed conflict with such forces of another nation" during the time that these claimants or any of them were in the military or naval service of the United States as enlisted men and that therefore No. 179 furnishes him no lawful authority to allow these claims and to issue his warrants for the payment of them.

As to the Page claim he further contends that Page has not received an "honorable discharge" from the army service but has merely been transferred from one branch of that service to another, and that therefore he does not come within the classification mentioned in No. 179 as those entitled to receive the benefits of that act.

The questions whether the Court can give any force or effect to J. R. 19 in construing No. 179 or whether this joint resolution has the effect of amending that act are constitutional questions. Questions of this class are not considered unless necessary for a determination of the matter before us. *State* v. *Hall,* 96 Vt. 379, 382, 119 Atl. 884, and cases there cited.

Therefore we will first take up the question as to the status of these claimants, omitting all consideration of J. R. 19. That is, do the provisions of No. 179 entitle the relator to the issuance of the writ of mandamus which he is here seeking? To be so entitled his case must be clearly proved. That is, the right to have the auditor issue his warrants for the payment of these claims, or some of them, must be clearly established. *Bates* v. *Keith,* 66 Vt. 163, 166, 28 Atl. 865; *City of Burlington* v. *Burlington Traction Company,* 98 Vt. 24, 36, 124 Atl. 857.

The facts material on this issue as agreed to by the parties and made a part of the record in this case are as follows:

1. The so-called "Lend-Lease" Bill (22 U. S. C. A. §§ 411-419) was approved by the President under date of March 11, 1941.

2. On July 12, 1941, Secretary of the Navy Knox is reported to have said that a United States destroyer dropped a depth bomb in connection with work of rescuing survivors from a sunken British vessel.

3. On September 5, 1941, the United States destroyer Greer was attacked.

4. On October 17, 1941, the United States destroyer Kearney was attacked.

5. On October 31, 1941, the United States destroyer Reuben James was attacked and sunk.

6. The Secretary of the Navy, Hon. Frank Knox, under date of October 10, 1941, addressed a letter to the adjutant general of this State in which he stated that ''the President issued orders to the United States· Navy to exercise force to protect lives and property which are or may be endangered by the hostile acts of any foreign power. The President issued such orders to the Navy on September 11, 1941.''

In considering this statute No. 179 we are to remember that the real meaning and purpose of the Legislature is the thing to be sought after and if fair and reasonable construction discloses it, it is to be given effect. *In re Fulham's Estate,* 96 Vt. 308, 314, 119 Atl. 443.

Also it is a familiar and well settled rule of construction that the true meaning of the Legislature is to be ascertained not from the literal sense of the words used but from a consideration of the whole and every part of the statute, the subject matter, the effects and consequences and the reason and spirit of the law. *In re Fulham's Estate,* 96 Vt. 308, 316, 317, 119 Atl. 433, and cases there cited.

No statute is to receive a construction so strict as to defeat its purpose. *Brammall* v. *Larose,* 105 Vt. 345, 349, 165 Atl. 916.

Under the provisions of P. L. 8057, ''enlisted men of the militia, National Guard and volunteers in the service of the United States'' were entitled to state pay at ten dollars per month for a period not to exceed one year.

It clearly appears that the Legislature in enacting No. 179, amending P. L. 8057, intended that state pay should no longer be allowed for such service during peace time. It is to be payable only ''in the event that the military or naval forces of the United States became actively involved in armed conflict with such forces of another nation,'' is awarded only for service dur-

ing time of such involvement for a period not to exceed twelve months and is payable upon honorable discharge from or death in such service.

From the wording of No. 179, it appears that the Legislature had in mind the fact of which we take judicial notice that in modern times war-like conditions may exist between two or more nations, although no war may have been formally declared. Under the wording of this act it is not necessary that both our military and naval forces become actively involved in armed conflict to entitle an enlisted man to state pay. He is entitled to this benefit if either the military *or* naval forces become so involved. It follows that the benefits of the act are not made to depend upon a state of total or "all out" war.

From No. 1 of the agreed statement of facts it appears that the "Lend-Lease" Bill was approved by the President March 11, 1941.

No. 2 is merely a hearsay statement and affords little or no aid in the determination of the question before us.

From No. 3 it appears that on September 5, 1941, the United States destroyer Greer was attacked. In this connection it is significant that the President of the United States on September 11, six days after the Greer incident, issued orders to the navy to exercise force to protect lives and property "which are or may be endangered by the hostile acts of any foreign power."

From No. 4 it appears that after this order was issued the United States destroyer Kearney was attacked on October 17, 1941, and in No. 5 it is stated that on October 31, 1941, the United States destroyer Reuben James was attacked and sunk.

The President's order of September 11, 1941, of which we may also take judicial notice, recognized the fact that then we were no longer living in peace time security. This order followed by attacks upon our ships as above stated conclusively shows that to some extent war-like conditions existed.

While the agreed statement of facts does not show by what nation or nations these attacks were made on our vessels, that fact is not material. These attacks were made and therefore it is a necessary inference that the forces of some other nation or nations made them. A conflict is a hostile encounter. Webster's New Int. Dict. By authority of our Constitution the

President of the United States is the commander-in-chief of both our naval and military forces. Therefore when the President's order of September 11, 1941, was followed· by attacks upon the destroyers Kearney and Reuben James as hereinbefore stated, our naval forces were actively involved in armed conflict with such forces of another nation or nations and this condition existed from and after September 11, 1941, the date of the aforementioned Presidential order.

■ It follows that Parker and the other claimants in the same class, each of whom has received an honorable discharge from the service since September 11, 1941, are entitled to state pay from that date to the time of discharge.

In view of the result here reached it is not necessary to consider what effect, if any, J. R. 19 had upon No. 179.

■■ It remains to consider the question, was the order transferring Page from active service to the control of the State an honorable discharge within the meaning of that term as used in No. 179? We hold it was not. Page was by this order transferred to inactive service but he remains subject to call. In *United States* v. *Kelly,* 15 Wall. (U. S.) 34, 36, 21 L. Ed. 106, honorable discharge is defined as ''a formal, final judgment passed by the government upon the entire military record of the soldier and an authoritative declaration by it that he has left the service in a state of honor.'' This definition is approved in *United States* v. *Landers,* 92 U. S. 77, 78, 23 L. Ed. 603.

It follows that Page has not received an honorable discharge from the service and therefore he and the other claimants in the same class are not entitled to state pay at this time.

Judgment

*That the prayer of the petition as to the claims of Bernard E. Parker and other claimants in the same class be granted without costs and that a mandate issue forthwith directing the auditor of accounts to allow same and to issue his warrants for the payment thereof. As to the claims of Mark G. Page and others of the same class, the petition is dismissed without costs.*