## THE SHELL OIL COMPANY *v.* EDWIN H. BROWNLEY, Receiver, Etc.

[No. 39, April Term, 1942.]

*Decided June 17, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*William Saxon,* with whom was *Albert A. Sapero* on the brief, for the appellant.

*Edwin H. Brownley* for the appellee.

COLLINS, J., delivered the opinion of the Court.

The Hercules Power Gasoline Company for a number of years, prior to June 1, 1933, was engaged as a com-

pounder in the motor vehicle fuel business in Baltimore City. After June 1, 1933, it was unable to file a proper bond with the State of Maryland as required by Article 56, Section 246, Code (1939). It continued to buy white gasoline from the appellant, Shell Oil Company, and after mixing it with other ingredients, sold its own brand of gasoline, the appellant paying the State tax on the gasoline and billing Hercules for the products plus the tax. On April 16, 1940, receivers were appointed for Hercules Power Gasoline Company. On January 23, 1941, appellant as creditor filed a claim in the receivership proceedings in the amount of $21,449.75, showing no separation between the total amount of indebtedness due by the insolvent company as between the price of gasoline and the amount of tax paid on this gasoline by Shell Oil Company, appellant. Later, on December 1, 1941, the appellant filed a petition in the receivership case alleging the filing of its claim and stated that the amount of this claim represented the sum of $14,830.31 for gasoline, while the balance of $7,619.44 consisted of gasoline tax paid by appellant to the State of Maryland on account and behalf of the debtor corporation, Hercules Power Gasoline Company, and asked that an order be passed allowing the petitioner the said sum of $7,619.44 as a priority over all other indebtedness. After a hearing, it was ordered by Circuit Court No. 2 of Baltimore City that this petition be dismissed. An appeal is taken to this court against Edwin H. Brownley, the remaining receiver of the Hercules Power Gasoline Company, from that order.

Appellant contends that by reason of Code, 1939, Art. 56, Sec. 258, the State of Maryland is entitled to a preferred lien for a gasoline tax and that the appellant, Shell Oil Company, is entitled to subrogation to the rights of the State for its lien against the funds of the Hercules Power Gasoline Company, in the hands of the receiver, the appellee herein, provided the tax paid was due from Hercules Power Gasoline Company.

The primary question for our decision is whether the gasoline tax was due to the State of Maryland from the Shell Oil Company, appellant, or from the Hercules Power Gasoline Company.

Code, 1939, Art. 56, Sec. 241, fixing the liability for gasoline tax, provides as follows: "On and after January 1, 1924, each and every dealer as defined in this sub-title who is now engaged or who may hereafter engage in his own name or in the name of others, or in the name of his representatives or agents in this State, in the sale or use of motor vehicle fuel as herein defined shall not later than the last day of each calendar month, render to the Comptroller a statement of all motor vehicle fuel sold or used by him or them in the State of Maryland during the preceding calendar month, and pay a license tax of two (2) cents per gallon on all motor vehicle fuel as shown by such statement in the manner and within the time hereinafter stipulated; (provided, however, that the tax imposed upon motor vehicle fuel sold to compounders shall be returned and paid as herein provided by such compounders upon all motor vehicle fuel purchased by them and sold or used in the State of Maryland in the form of a compound or otherwise)."

The amount of the gasoline tax has been increased by subsequent legislation. Code, 1939, Art. 56, Sec. 243 and Section 242, as amended by Acts of 1941, Chap. 856, Sec. 3.

The term "dealer" is defined by Article 56, Section 240, as follows: "The term 'dealer' is hereby defined as any person, firm or corporation (including the State of Maryland and any political subdivision thereof), (1) making the first sale in this State of any motor vehicle fuel, imported from beyond the territorial confines of the State after the same shall have been received in this State; (2) consuming or using in this State any motor vehicle fuel so imported, who shall have purchased the same before it shall have been received by any other person in this State; or (3) producing, refining, preparing, distilling, manufacturing, blending or compounding motor vehicle fuel in this State."

It is further provided among other things in Article 56, Section 246, that it shall be unlawful for any dealer to receive, sell, use, or distribute any motor vehicle fuel in the State without a license from the Comptroller. One of the requirements for obtaining this license is the filing of a bond. Article 56, Section 247, provides that this bond "* * * be conditioned upon the prompt filing of true reports and the payment of such dealer to the Comptroller of any and all motor fuel taxes which are now or which hereafter may be levied or imposed by the State of Maryland together with any and all penalties or interest thereon * * *." It is further provided by Article 56, Section 249: "After January 1, 1924, every dealer in motor vehicle fuel shall render to the Comptroller, on or before the last day of each month, on forms prescribed, prepared and furnished by the said Comptroller, a sworn statement of the number of gallons of motor vehicle fuel sold or used by him or them during the preceding calendar month, * * *. Bills shall be rendered to all purchasers of motor vehicle fuel by dealers in motor vehicle fuel as herein defined, except in cases of retail sales where exemption is not claimed by the purchaser under the terms of this sub-title. Said bills shall contain a statement printed thereon in a conspicuous place that the liability to the State for the license tax herein imposed has been assumed and that he or they will pay said license tax on or before the last day of the following month."

Appellant contends that on account of the proviso at the end of Section 241, *supra*, that the dealer, Shell Oil Company, appellant, selling the fuel to the compounder, Hercules Power Gasoline Company, the tax on the gasoline to the State was due from Hercules and not from Shell.

What was the plain intention of the Legislature? Chief Judge Bond said in the case of *Darnall v. Connor*, 161 Md. 210, 216, 155 A. 894, 896: "And as to tax statutes, too, the Supreme Court has repeated what has often been said by other courts, that 'it may be conceded that no

tax can be levied without express authority of law, but the statutes are to receive a reasonable construction with a view to carrying out their purpose and intent.' *Scottish Union & Nat. Ins. Co. v. Bowland,* 196 U. S. 611, 629, 25 S. Ct. 345, 351, 49 L. Ed. 619; *In re Detroit & Windsor Ferry Co.,* 227 Mich. 143, 146, 198 N. W. 725; *Curtis v. Corbin,* 93 Conn. 648, 107 A. 506; *State v. Bazille,* 97 Minn. 11, 14, 106 N. W. 93, 6 *L. R. A. N. S.* 732, 7 *Ann. Cas.* 1056; *In re Fulham's Estate,* 96 Vt. 308, 314, 119 A. 433; *Crescent [Mfg.] Co. v. South Carolina Tax Commission,* 129 S. C. 480, 492, 124 S. E. 761. And in Maryland, as elsewhere, in earlier cases, considerations such as a known general purpose of a statute have led the court to find and give effect to legislative intentions in tax or penal statutes, not entirely conforming to words used. *Baltimore v. Baltimore & Ohio R. Co.,* 6 Gill 288, 297, 48 *Am. Dec.* 531; *Buchanan v. Comm'rs of Talbot County,* 47 Md. 286; *Roland Park Co. v. State,* 80 Md. 448, 31 A. 298; *State v. Archer,* 73 Md. 44, 20 A. 172; *House v. House,* 5 Har. & J. 125. The whole rule for ascertaining the effect of a statute is still that the plain intention of the Legislature must prevail, however that plain intention is made to appear." *Rosenburg v. Bouse,* 172 Md. 530, 192 A. 323. From the preamble to the original Act, Chapter 522 of the Acts of 1922, it appears that the tax for this purpose of revenue is laid primarily on the dealer and by being added to the price of the gasoline is successively passed on and paid and borne by the ultimate consumer in the operation of motor vehicles. An examination of the whole statute on the gasoline tax fails to show any provision for liability of the gasoline tax on the compounder except in the proviso in Section 241, *supra.* By Subsection (c) of Section 240, *supra,* the compounder is the dealer. It is plain under the requirements of a bond as set out in Sections 246 and 247, *supra,* that the intent of the Legislature was that the compounder as a dealer should file a bond assuring the payment of the tax to the Comptroller. There was certainly no intent by the Legislature that the first dealer

could sell gasoline to the unlicensed compounder, who is defined as a dealer, without paying the gasoline tax to the Comptroller. It is evident that the intent was that when the first dealer sold gasoline to a compounder who is a dealer and who in order to be a dealer had filed a bond to indemnify the State for the tax, the latter of the two dealers becomes primarily liable for the tax. As compensation for this liability and for securing the State by a bond, an extended period is given within which to pay the tax to the State. To hold that a dealer could sell gasoline to a compounder not licensed as a dealer and who had not filed the bond to assure payment of the tax to the State would, as pointed out by the chancellor, "violate every principle of statutory construction." Such a ruling would violate the very intent of the statute which is to provide revenue and to assure the payment of that revenue by the filing of an indemnity bond.

It therefore must be concluded in the instant case that the tax on the gasoline to the State was due from Shell Oil Company, appellant, and any taxes unpaid to appellant are due by way of reimbusement as a general claim as one of the steps by which the tax was passed on to the purchaser from the insolvent corporation, the appellee here, and probably collected by it. *In re Riemer*, 82 F. 2d 162; *Gulf Oil Corp. v. Grady (In re Conklin et al.)*, 1940, 110 F. 2d. 178; *In re Newland et al. (Appeal of Gulf Corp.)*, 1940, 115 F. 2d 165. The tax being due primarily from appellant corporation upon which rested the obligation of discharging the debt to the State, it cannot, of course, by its payment be entitled to subrogation to any rights of the State, regardless of what those rights migth have been, a determination of which is not necessary here. *Sheldon on Law of Subrogation*, 1893 Ed., Sec. 46, page 71, and cases therein cited. *Poe v. Philadelphia Casualty Co.*, 118 Md. 347, 84 A. 476; *Dinsmore v. Sachs*, 133 Md. 434, 105 A. 524.

> *Order affirmed, costs to be paid by appellant.*